*J. M. WORTH, Treasurer, v. WILMINGTON & WELDON RAILROAD COMPANY and RALEIGH & GASTON RAILROAD COMPANY.

## Taxation—Railroads.

1. A statute imposing a tax upon the gross receipts of some railroad companies and upon the capital stock of others, is unconstitutional, as not levying taxes by a uniform rule.

2. A charter which declares that "the property of a railroad company and the shares therein shall be exempt from any public charge or tax whatever," exempts the company from all taxation, whether upon gross receipts or capital stock, for such charter is a contract and protected by the federal constitution.

(*Gatlin* v. *Tarboro*, 78 N. C., 119; *Belo* v. *Commissioners*, 82 N. C., 415, cited and approved.)

---

*Mr. Justice MERRIMON having been of counsel, did not sit on the hearing of this case.

CIVIL ACTION tried at January Term, 1882, of WAKE Superior Court, before *Gilmer, J.*

The demurrer was overruled and the defendant appealed.

*Attorney-General* and *J. W. Graham*, for plaintiff.
*Messrs. Geo. Davis* and *Stedman & Latimer*, for W. & W. R. R. Co.
*Messrs. Merrimon* and *Fuller*, for the R. & G. R. R. Co.

SMITH, C. J.   In the original act incorporating the Wilmington and Raleigh railroad company, ratified February 3, 1834, which name was, in a subsequent amendment, changed to that the defendant company now bears, as was its projected northern terminus removed from Raleigh to a point on the Roanoke river, is contained the following clause:

"All the property purchased by the said president and directors, and that which may be given to the said company, and the works constructed under the authority of this act, and all profits accruing on said works, and the said property shall be vested in the respective shareholders of the company, and their successors and assigns forever, in proportion to their respective shares, and the shares shall be deemed personal property, and the property of said company and the shares therein shall be exempt from any public charge or tax whatsoever.

In the revenue act of 1876–'77, ch. 156, schedule C, section 1, is contained the following provision:

" Every railroad or canal company incorporated under the laws of this state, and not liable to a tax upon the property of said company, or the shares therein, shall pay to the state a tax on the corporation equal to the sum of one per cent. upon the gross receipts of said company.   The said tax shall be paid semi-annually, upon the first days of July and January, commencing upon the first day of July, 1877.; and for the purpose of ascertaining the amount of the same, it shall be the duty of the treasurer of said company to render to the treasurer of the state, under oath

or affirmation, a statement of the amount of gross receipts of said company during the preceding six months; and if such company shall refuse or fail, for a period of thirty days, after such tax becomes due, to make return or pay the same, the amount thereof as near as can be ascertained by the public treasurer, with the addition of two per centum thereto, shall be collected for the use of the state as other taxes are collected: Provided, that when a line of railroad or canal, belonging to any company liable to this tax, lies partly in this state and partly in an adjoining state or states, the part or share of such earnings of the company only shall be subject to the tax, as will be in that proportion to the whole receipts which the length of the road or canal within the limits of the state shall bear to the whole length of such road or canal.

Every railroad or canal company incorporated under the laws of this state, which is liable to a tax upon its franchise and personal property, but exempt from a tax upon its real estate held for right of way, station places and workshop locations, shall, in addition to other taxes, pay as a tax upon said corporation a sum equal to one-half of one per cent. upon the gross receipts of said company.

Every railroad and canal company incorporated under the laws of this state, and doing business herein, and not liable to a tax upon the property of said company, or the tax before mentioned in this section, shall pay a tax of one per cent. upon the actual cash value of every share of its capital stock to the treasurer of the state for its use, on the first day of July, 1877, and each year thereafter."

The same provisions, as to the enforcement of the taxes levied under the first, are annexed to the second and third, and a like apportionment when the road or canal runs into an adjoining state, and the estimate is only to be made upon the gross earnings accruing from April 1st, 1877.

The same substantial enactments are found in the subsequent laws, except that in that of 1881 there is substituted in place of

the tax upon the cash value of the shares of the capital stock, the imposition of "a privilege tax of.twenty-five dollars per mile per annum," and payable "on the first day of July, 1881, and each year thereafter."

The defendant company denying its liability for any of the taxes imposed in these statutes, and claiming an exemption therefrom under its charter, the present suit is instituted for their enforcement, and the judgment overruling the demurrer brought up for review by the appeal, presents the single question of the extent and legal effect of the clause in the charter in protecting the company from these public burdens.

It will be noticed that provision is made for the taxation of three classes of roads, and the taxes imposed upon one are not imposed upon the other two: ·

1. If the road is, by virtue of the contract contained in its charter, exempt from taxation upon its property or shares, a tax is levied upon the incorporation equal in amount to one per centum upon its gross receipts.

2. If it be exempt from liability to taxation upon its real estate held "for right of way, for station places and workshop locations," following the language of the exemption contained in the charter of the North Carolina railroad company, as amended in the act of February 14th, 1855, but is liable to a tax upon its franchise and personal estate, it is subjected to an additional tax levied upon the corporation of one-half of one per centum upon the gross receipts.

3. If the property of the road be exempt, and it be not liable to the preceding tax, it was before subjected to a tax of one per cent. upon the cash value of the shares, and by the act of 1881, instead, to what is termed a privilege tax of twenty-five dollars per annum for each mile of its track through its entire extent.

The first enumertaed tax is not general in its application to railroads and canals, but is special and confined to such only as fall within the descriptive words of the statute, and the same is strictly true as to the others. The obvious result of this legis-

lation is to impose burdens on exempted roads, which are not imposed upon those unexempted, and *pro tanto* to counteract the effect of the discriminating privileges and immunities that would otherwise subsist between them.

If the same general burdens were put upon all alike, whatever might be the subject matter of the taxation, the favored roads would continue to possess and enjoy the privileges conferred in their charter, and not found in the charters of the others. Indirectly, then, the legislation tends to withdraw the immunities secured by their charters, and constituting a contract between the state and themselves, or lessen their value, so that all may proximately, at least, stand upon the same footing, as if none such had been conferred.

We should be reluctant to hold, if there were no question of constitutional right involved, that this method of levying taxes was sanctioned by our own constitution, and consistent with the equality and uniformity which it contemplates.

The *"uniform rule"* to be observed in the exercise of the taxing power seems to be so far applicable to the taxes imposed on " trades, professions, franchises and incomes," as to require that no discriminating tax be imposed upon persons pursuing the same vocation, while varying amounts may be assessed upon vocations or employments of different kinds.

" Although it is not expressly provided that the tax on trades, &c., shall be uniform," in the words of RODMAN, J., delivering the opinion in *Gatlin* v. *Tarboro*, 78 N. C., 119, " yet a tax not uniform, as properly understood, would be so inconsistent with natural justice, and with the intent which is apparent in the section of the constitution above cited (Art. V, §3), that it may be admitted that the collection of such a tax would be restrained as unconstitutional." This uniformity prescribed in the constitution of Illinois, as declared by Mr. Justice MILLER, extends " to the class upon which the law shall operate; that is, inn-keepers may be taxed by one, ferries by another, railroads by another (rule); provided, that the rule as to inn-keepers be uniform as to all inn-keepers; the rule as to ferries be uniform as to

all ferries, and the rule as to railroad companies be uniform as to all railroad companies. *Railroad Tax Cases,* 92 U. S. Rep., 575. The governing principle is not that the same specific tax shall be paid by each, as a form of capitation tax, but that, whether levied upon and measured by the amount of gross or net earnings or other standard, as upon real or personal estate, there shall be no discrimination made among the individuals of a class, based upon privileges and immunities secured to one under contract and not to another. The essential element in all systems of taxation is equality in imposing burdens upon the property of the tax-payers, so that each one, possessing the same species of property, shall pay the same proportionate tax as every other levied upon that property, and in this state such tax is required to be *ad valorem.*

But aside from the operation of the provisions of the constitution of the state, we are confronted with the inquiry whether the terms of the exemption in the recited clause of the charter are not a protection against either of the forms of taxation adopted in the revenue law. Its language is certainly very broad and comprehensive, declaring, after an enumeration of all property obtained by purchase or gift, the works constructed and all profits accruing thereon which are to vest in the shareholders, "that the property of said company and the shares therein shall be exempt from any public charge or tax whatsoever."

We are not left in doubt as to the construction of this clause, as it has been before the supreme court of the United States, and its force and effect as a contract determined. *Railroad* v. *Reid,* 13 Wall., 266. We reproduce a portion of the brief opinion delivered by Mr. Justice DAVIS, where the validity of a tax assessed by the state upon the franchise and rolling stock of the company was drawn in question:

"The general assembly of North Carolina told the Wilmington & Weldon railroad company, in language which no one can mistake, that if they would complete the work of internal improvement for which they were incorporated, their property

and the shares of their stockholders should be forever exempt from taxation. This is not denied, but it is contended that the subsequent legislation does not impair the obligation of the contract, and this presents the only question in the case. The taxes imposed are upon the franchise and rolling-stock of the company, and upon lots of land appurtenant to and joining part of the property of the company, and necessary to be used in the successful operation of its business. It certainly requires no argument to show that a railroad corporation cannot perform the functions for which it was created without owning rolling-stock and a limited quantity of real estate, and that these are embraced in the general term *property*. Property is a word of large import, and in its application to this company included all the real and personal estate required by it for the successful prosecution of its business. If it had appeared that the company had acquired either real or personal estate beyond its legitimate wants, it is very clear that such acquisitions would not be within the protection of the contract."

In reference to the contention that the franchise was not property, in the sense in which that word is used, he proceeds thus: "This position is equally unsound with the others taken in this case. Nothing is better settled than that the franchise of a private corporation, which, in its application to a railroad, is the privilege of running it and taking fare and freight, is property, and of the most valuable kind, as it cannot be taken for public use even with compensation." *Red. Rail.*, 129, §70.

The numerous cases referred to in the elaborate brief of the counsel for the public treasurer, asserting the rule that the words, used in an alleged surrender of any portion of the taxing power, will be construed with great strictness against the claimant, and only conceded when they are free from all ambiguity, have little bearing upon the present case, because the language used has received an authoritative and binding interpretation, and it is settled that all the property of the corporation

appropriate to its business, in whatever consisting, and the shares of stock are perpetually relieved of taxation.

The tax imposed upon companies described in the second class cannot be claimed, since under the decision the defendant company does not belong to it, not being a railroad "liable to a tax upon its franchise and personal property." Nor can it be charged under the descriptive words applied to companies of the third class, since the shares formerly taxed, and the road-bed taxed since it is real estate, are protected by the exemptions in the charter. The one is not less a tax upon the shares, because paid by the company; and the road-bed, though the imposed tax is denominated a privilege tax, is not less real estate; and if it were, in strictness, a privilege tax, this would be a tax upon the franchise, the meaning being the same.

The only portion of the law which can have application is that which exacts a tax laid upon the corporation, whose measure is the one hundredth part of the gross receipts of the company.

If this be a tax on the corporation as an entity, it must be in the nature of a *capitation tax*, or a tax upon the exercise of its corporate functions, in analogy to that required of natural persons in pursuing some employment or avocation. In the latter case the tax is upon the use of its corporate franchises, that is, upon the corporate franchises which are exercised, and this, the decision affirms, is a violation of the contract of exemption. If the tax be upon the gross receipts, not upon the exercise of its franchises by which they are earned, as a fund accumulated thereby, it is most clearly a tax upon personal property owned and undistributed. When divided among the shareholders and entering into the bulk of their respective estates, it ceases to be the property of the corporation, and loses the privilege it before possessed, as corporate funds. It then becomes liable to the imposition of public burdens, without reference to the source from which it was derived, in the hands of the tax-payer.

It is true there are several methods of taxing corporations. The subject matter of taxation may be capital stock—the real

and personal property of the corporation—the receipts or earnings—the shares themselves as property in the hands of the stockholders, and the franchise.   The property of the shareholder is a distinct form of taxable property, as is held in *Belo* v. *Commissioners*, 82 N. C., 415, but it is not seen, when the franchise is itself property, and its exercise the use of that property, how any tax can be imposed upon a corporation that is not a tax upon its property.

The act of incorporation brings a new person into existence, and defines and prescribes its faculties and privileges, and while in the absence of a contract that it shall not be done, these may be taxed as are professions and trades, yet the state may, by explicit and unmistakable words, and for a consideration, part with the power, so that its attempted resumption would come in contact with a provision of the federal constitution.

A mere exemption of corporate property from taxation, as an expression of legislative volition, and not embodying the elements of a contract, may be recalled at any time and the property subjected to public burdens, as declared in the cases of *Tucker* v. *Ferguson*, 22 Wall., 527, and *North Missouri Railroad Company* v. *Maguire*, 20 Wall., 46.

"Forbearance to tax," says Mr. Justice SWAYNE, in the first case, "was a bounty voluntarily given by the state.   Forbearance for a time, doubtless, increased to some extent the value of the bonds.   Never to tax, would have increased their value still.   There is no foundation for a claim for one more than for the other."

So, too, it has been held that an exemption is personal to the corporation upon which it is conferred, and that a sale under a decree made upon a mortgage, while transferring the franchises of the company, does not transfer the immunity of the property from taxation in the hands of the purchaser.   *Morgan* v. *Louisiana*, 93 U. S. Rep., 217.

While it may be a matter of regret, as has been more than once intimated from the bench of the supreme court of the

United States, and of some of the states, that the right of one general assembly to surrender a portion of the sovereign power to tax, so as to disable itself or its successor to resume it, has been recognized, and that the inalienability of it rendered such attempt void, so that no contract was entered into to be protected by the federal constitution, the contrary in a limited degree has been so long and so often affirmed and adjudged, that it is no longer an open question for the court.

In the forcible language of the court in *Greenwood* v. *Freight Co.*, 105 U. S. Rep., 13: "The opinion in that case (The Dartmouth College case) carried the protection of the constitutional provision somewhat in advance of what had been decided in *Fletcher* v. *Peck*, 6 Cran., 87, and the preceding cases, and held that it applied not only to contracts between individuals and to grants of property made by the state to individuals or to corporations, but that the rights and franchises conferred upon private, as distinguished from public corporations by the legislative acts under which their existence was authorized, and the right to exercise the functions conferred upon them by the statute were, when accepted by the corporation, contracts which the state could not impair."

We have discovered no case in which the ruling in *Wilmington & Weldon Railroad Co.* v. *Reid*, and *Raleigh & Gaston Railroad Co.* v. *Reid*, reported in 13 Wall., 264—269, has been impaired or doubted as a controlling authority. It is our duty equally to sustain the constitution of the United States, and declare null any act of legislation that comes in conflict with its provisions, and in doing so to recognize as authoritative the interpretations put upon it by the supreme court of the United States.

While corporations, favored in their early struggles by the kindly hand of state legislation, it would be reasonable to expect, after success has crowned their efforts, and their resources have expanded and become large, would be willing to contribute to the common burden resting so heavily upon the taxable property of the state, and to this end yield at least some of their special

privileges, it is nevertheless our duty to protect all their consti-
tutional rights from infraction or abridgment.   The interests of
these companies, and of the people of the state whose territory
they traverse, are and ought to be identical, and their efforts har-
monious and united in building up and maintaining the general
prosperity.   To us it belongs, however, to expound and enforce
the law, and, with this duty performed, we have nothing more
to add.   The judgment must be reversed, the demurrer sus-
tained and the defendant recover costs.

Error.                                     Reversed.