## ATLANTIC COAST LINE RAILROAD COMPANY v. DAUGHTON, COMMISSIONER OF REVENUE OF THE STATE OF NORTH CAROLINA, ET AL.

## NORFOLK SOUTHERN RAILROAD COMPANY v. SAME.

## SEABOARD AIR LINE RAILWAY COMPANY v. SAME.

## SOUTHERN RAILWAY COMPANY v. SAME.

APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF NORTH CAROLINA.

Nos. 724, 727, 744, 756.   Argued April 25, 1923.—Decided June 4, 1923.

1. A State may, consistently with the Federal Constitution, impose a tax upon the net income of property, as distinguished from the net income of him who owns or operates it, although the property is used in interstate commerce.   P. 420.
2. The Income Tax Law of North Carolina directs that the "net operating income" of railroads within the State be determined upon the basis of accounts to be kept according to the method established by the Interstate Commerce Commission, and lays a tax upon the "net income," to be ascertained by deducting from "net operating income" only uncollectible revenue, certain taxes, and amounts paid for car hire, thus treating the railroad property within the State as the thing of which the income is taxed, and taking no account of other income of the corporation owning the railroad and making no deduction of its capital charges.   *Held*, That the statute, considering this distinction, does not in effect, depart from the Commission's definition of net income, nor, as applied to

interstate railroads, does it directly burden interstate commerce, or discriminate against it, (other public service corporations, wholly intrastate, being treated in the same way); nor does it, with other railroad taxes of the State, make an aggregate burden violating the commerce clause; nor does it violate that clause by departing from the standard form of accounts prescribed by the Interstate Commerce Commission under the Transportation Act, 1920. P. 421.

3. The above statute is not obnoxious to the equal protection clause, either in refusing to public service corporations, including railroads, deductions of interest on funded debt, rentals and worthless debts, which are allowed to other corporations and individuals in calculating net income, or in not requiring certain short line railroads to keep the accounts required of other railroads. P. 423.

4. The Constitution of North Carolina does not forbid taxing the net income of property operated as a railroad as distinguished from the net income of the company owning the railroad. P. 424.

5. The above cited statute does not violate the uniformity clause of the North Carolina Constitution, in that the permissible deductions in computing net income of public service corporations are different from, and not so great as, those allowed individuals or other corporations. *Id.*

6. The statute is not retroactive and void under the state constitution because it lays a tax based upon the net income of the calendar year within which it was enacted. P. 425.

7. A bill in the District Court, to enjoin the collection of state taxes alleged to be unconstitutional, will not be dismissed upon the ground that a plain, adequate and complete remedy exists, in paying the taxes under protest and suing to recover the amount paid, when the statute relied on as affording such remedy is recent and has not been construed and applied by the highest court of the State. P. 425.

Affirmed.

APPEALS from decrees of the District Court dismissing the bills, after hearing the merits, in four suits brought by railroad companies to enjoin the enforcement of a state income tax.

*Mr. Thomas W. Davis*, with whom *Mr. George B. Elliot* and *Mr. Harry Skinner* were on the brief, for appellant in No. 724.

*Mr. George H. Brown* and *Mr. Wm. P. Bynum,* with whom *Mr. James S. Manning,* Attorney General of the State of North Carolina, *Mr. Frank Nash, Mr. Locke Craig, Mr. Thomas D. Warren* and *Mr. Sidney S. Alderman* were on the briefs, for appellees.

*Mr. W. B. Rodman* for appellant in No. 727.

*Mr. S. R. Prince,* with whom *Mr. W. M. Hendren* and *Mr. L. E. Jeffries* were on the brief, for appellant in No. 756.

*Mr. Murray Allen, Mr. Forney Johnston* and *Mr. James F. Wright* filed a brief on behalf of appellant in No. 744.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

The Constitution of North Carolina (Article V, § 3, as amended January 7, 1921) authorizes the General Assembly to tax incomes at a rate not exceeding six per cent. The Income Tax Act of March 8, 1921 (Revenue Act, c. 34, Schedule D, §§ 100–904, as amended by c. 35, Public Laws 1921) laid upon corporations a tax equal to three per cent. of the entire net income as therein defined and upon individuals a progressive tax not exceeding that percentage. For the purpose of ascertaining the taxable income the statute divides taxpayers into three classes— individuals, ordinary corporations and public service corporations (including railroads). The statute, in terms, taxes only net income. For railroads and other public service corporations required to keep accounts according to the method established by the Interstate Commerce Commission, it makes those accounts the basis for determining the "net operating income" (§ 202 as amended); and it directs that, in order to ascertain the "net income," there shall be deducted from the net operating income (*a*) uncollectible revenue; (*b*) taxes for

the income year, other than income taxes, and war profits and excess profits taxes; (*c*) amounts paid for car hire. Whether the statute is unconstitutional, because it fails to include among the deductions from income allowed public service corporations the capital charges, including other rentals paid, is the main question for decision.

The first year's tax under the act was payable in 1922, with respect to the net income received during the calendar year 1921. To enjoin its enforcement these four corporations brought suit in the federal court for the Eastern District of North Carolina against the Commissioner of Revenue and others. Each plaintiff owns and operates a line of railroad within the State, and is an interstate carrier. Each assails the statute on the grounds that it violates the commerce clause, the Fourteenth Amendment and the state constitution; and only on these grounds. Each case was heard upon the merits. And in each a final decree was entered dismissing the bill. Appeals were taken under § 238 of the Judicial Code; and orders of the District Court stayed collection of the taxes pending the determination of the appeals. Since the cases are properly here on federal questions, all questions presented by the record whether involving federal law or state law must be considered. *Southern Ry. Co.* v. *Watts,* 260 U. S. 519.

It is conceded by appellants that taxation of the net income of an interstate carrier does not violate the commerce clause, *United States Glue Co.* v. *Oak Creek,* 247 U. S. 321; *Shaffer* v. *Carter,* 252 U. S. 37, 57; *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113; and by the State, that taxation of gross receipts would be void as burdening interstate commerce. *Galveston, Harrisburg & San Antonio Ry. Co.* v. *Texas,* 210 U. S. 217. It is conceded by appellants that classification of public service corporations, and specifically of railroads, for purposes of taxation does not violate the Fourteenth Amend-

ment; *Bell's Gap R. R. Co.* v. *Pennsylvania,* 134 U. S. 232, 237; *Southern Ry. Co.* v. *Watts,* 260 U. S. 519; and by the State, that an arbitrary classification is obnoxious to the equal protection clause. *Southern Ry. Co.* v. *Greene,* 216 U. S. 400. The contentions are that the statute, in fact, taxes gross income; that the classification as made by it is unreasonable; and that for these, and other, reasons it violates both the federal and the state constitution. All the contentions are, in our opinion, unsound. To appreciate the objections urged, and to present the reasons for holding them groundless, it is necessary to show the incidence of the tax. This may be done by examining how the assessment of $13,133.09 made upon the Seaboard Air Line, and here assailed, was calculated.

The Seaboard being an interstate carrier, the accounts were kept as required by the Interstate Commerce Commission. Interstate business was apportioned, as customary, according to mileage. The results of operations within the State calculated according to the statute were these:

| Operating revenues | | $8,457,328.52 |
| Operating expenses | | 7,308,823.29 |
| Net operating income | | $1,148,505.23 |

From the net operating income were deducted:

| Uncollectible revenue | $6,342.31 | |
| Taxes paid | 410,043.38 | |
| Car hire | 294,350.02 | |
| Additional deductions | | $710,735.71 |
| Net taxable income | | $437,769.52 |

Tax on $437,769.52 at 3 per cent.   $13,133.09.

Thus, about one-twentieth ($\frac{1}{20}$) of the operating revenues of the Seaboard was subjected to taxation. To this one-twentieth the 3 per cent. income tax was applied.

The tax assessed ($13,133.09) is about one-six hundred and fiftieth ($\frac{1}{650}$) of the total operating revenues ($8,457,328.52).

That the calculation is correct, in accordance with the statute, is not disputed. That is, the net income earned, in 1921, by the Seaboard's lines in North Carolina was as calculated $437,769.52. The Seaboard insists that it had no net income taxable in North Carolina; but, on the contrary, a loss, of which $254,290.22 was apportionable to North Carolina. The loss is figured in this way:

Net income as calculated
   under the statutes . . . . . . . $437,769.52
Non-operating income—not
   taken into account under
   the statute [1] . . . . . . . . . . . . 539,643.30

     Total net income . . . . . . . . . . . . . . . . $977,412.82

From which deduct:

Capital charges (including rents paid) not
   taken into account under the statute [2] . . 1,231,703.04

     Net loss or deficit . . . . . . . . . . . . . . . . $254,290.22 [3]

[1] The items of the above non-operating income are
   these:

| | |
|---|---:|
| Dividend income . . . . . . . . . . . . . . | $113,350.45 |
| Income from funded securities. . . . | 97,257.47 |
| Income from unfunded securities. . | 13,781.90 |
| Income from lease of road. . . . . . . . | 259,525.95 |
| Joint facility rent income. . . . . . . . | 12,664.17 |
| Rent from work equipment. . . . . . | 5,047.23 |
| Rent from floating equipment. . . . | 18.22 |
| Rent from locomotives . . . . . . . . . . | 6,767.21 |
| Miscellaneous rent income. . . . . . . | 22,387.79 |
| Misc. non-operating physical prop- | |
|    erty . . . . . . . . . . . . . . . . . . . . . . . | 7,685.69 |
| Miscellaneous income. . . . . . . . . . . | 1,157.22 |

              $539,643.30

Thus the State takes, as the entity to be taxed, the railroad property operated by the Seaboard within the State. Therefore, it takes, as the primary basis for the tax, only operating revenues; that is, the gross receipts from operating such property. The Seaboard, on the other hand, assumes, as the entity which should be taxed, the company in respect to its North Carolina interests. Therefore the Seaboard takes, as the primary basis for the tax, in addition to the operating revenues of the lines within the State, North Carolina's proportion of the non-operating income of the company derived from other property owned by it, wherever situated. For the Seaboard, like

---

[2] The items of the above capital charges are these:

| | |
|---|---:|
| Interest on funded debt | $1,179,252.20 |
| Interest on unfunded debt | 43,823.64 |
| Annual allotment of discount on bonds | 24,494.16 |
| Rent of leased roads | 10,448.12 |
| Rents of joint facility | 34,480.98 |
| Rent of locomotives | 19,860.91 |
| Rent for floating equipment | 2,599.96 |
| Rent for working equipment | 510.24 |
| Rents, miscellaneous | 3,194.86 |
| Income charges, miscellaneous | 685.25 |
| | $1,231,703.04 |

If the above items were added the total would be $1,319,350.32. There is apparently some error in the items which is not however material to the result.

[3] For the Atlantic Coast Line the calculation in accordance with the statute shows a net income of $1,389,565.25. According to the company's contention the net income was $333,205.09.

For the Norfolk Southern the calculation in accordance with the statute, it is said, shows a net income of $653,882.17. (The correct figures would seem to be $603,003.51.) According to the company's contention there was a deficit of $424,338.92.

For the Southern Railway the calculation in accordance with the statute shows a net income of $2,384,068.71. According to the company's contention the net income on one calculation was $554,724.41 and on another calculation was $456,798.56.

most other railroad systems, is, to some extent, a holding company, as well as an operating company; and, as holding company, receives dividends from other concerns, interest on bonds of other concerns, and rental from property owned but not operated. As the State treats the operated property as the entity, it does not concern itself with interest charges and the rentals paid, just as it does not concern itself with a mortgage upon the real estate when it lays the *ad valorem* tax. On the other hand, as the Seaboard treats the company—the person—as the entity to be taxed, it undertakes to ascertain the net income of the company. This includes as gross income, a proportion of the receipts from property not within the State and includes among the deductions from the gross income of the company, the capital charges.

That a State may, consistently with the Federal Constitution, impose a tax upon the net income of property, as distinguished from the net income of him who owns or operates it, although the property is used in interstate commerce, was settled in *Shaffer* v. *Carter*, 252 U. S. 37, 44, 52. There an Oklahoma statute was sustained which laid the tax upon the net income of Oklahoma oil property owned by a citizen and resident of Illinois. The Federal Constitution which permits to be taxed the net income of property owned by an individual, although a citizen of another State, obviously does not preclude such a tax where the property is owned or operated by a corporation. It is a common provision in state income tax laws to tax the net income of property within the State which is owned, or operated, by non-residents.[4] The differences between the parties arise, in the main, not from differ-

---

[4] The Federal Government taxes the net income of property owned or business carried on within the United States by a citizen resident abroad. *DeGanay* v. *Lederer*, 250 U. S. 376. The New York income tax law involved in *Travis* v. *Yale & Towne Mfg. Co.*, 252 U. S. 60, 73, taxes the net income " from all property owned . . by natural persons not residents of the state."

ence in the method of determining what is net income, but from difference as to what is the subject of the tax. In other words, they differ as to the thing of which the net income is to be ascertained. This will appear from an examination of the several grounds on which the validity of the statute is assailed.

*First.* The contention that the statute is obnoxious to the commerce clause rests upon the argument that the State's definition of net income differs from that adopted by the Interstate Commerce.Commission; that the State is without power to depart from the Commission's definition so far as concerns interstate commerce; and that, since the statutory definition differs, the act is unconstitutional. A conclusive answer to that argument is found in the fact that the State adopts (without modification) the commission's definition for the net income of that which it taxes. For treating as the entity to be taxed, the railroad property operated by the company within the State, it appears that every item which the railroad claims the statute wrongly disallowed as a deduction is of such a character, that it is either clearly a capital charge (as distinguished from an operating charge) or reasonably may be deemed such as a matter of accounting.[5] The question of law thus presented is not one which involves enquiry into the intricacies of railroad account-

---

[5] To prove that the statute, in fact, taxes some part of the gross earnings, attention is called specifically to some minor items which the statute does not allow as deductions. But these stand in no different position than the major items—interest on funded debt and leased line rentals—discussed above. Prominent among these lesser items is "joint facility rents" which, in the case of the Seaboard, amounted net to $21,816.81. Joint facility rents paid were $34,480.98; those received (credited as non-operating income) were $12,664.17. This is rental paid for railroad facilities—like tracks, terminals and roundhouses. They are needed by the carrier as a part of the plant and, not being owned, are rented from others. The fact that they are used jointly with others, is, of course, immaterial. This rent, like the rent of a leased line, is paid to secure control of the

ing. Under the commerce clause it is essential that a
state tax shall not directly burden interstate commerce
and that it shall not discriminate against interstate com-
merce. With these essentials the North Carolina act
complies. It is not assessed on gross receipts.[6] Compare
*Peck & Co. v. Lowe,* 247 U. S. 165; *Pullman Co. v. Rich-
ardson,* 261 U. S. 330. It does not discriminate against
interstate commerce. For the taxable net income of other
public service corporations which are wholly intrastate is
determined also without allowing capital charges as a de-
duction. That there is no basis for the claim that the
commerce clause is violated by the burden resulting from
the aggregate of the several North Carolina railroad taxes
was settled in *Southern Ry. Co. v. Watts, supra.*

Another, and more technical, argument in support of
the contention that the statute violates the commerce
clause as applied to interstate carriers is based upon the
cases which sustain the power of the Interstate Commerce
Commission to prescribe a uniform system of accounting.[7]

property operated. Hire of freight cars might have been treated in
the same way, but the State, for reasons satisfactory to it, permitted
that financial charge to be deducted, and to that extent reduced the
tax.

[6] The term " net income," in law or in economics, has not a rigid
meaning. Every income tax act necessarily defines what is included
in gross income; what deductions are to be made from the gross to
ascertain net income; and what part, if any, of the net income, is
exempt from taxation. These details are largely a matter of govern-
mental policy. As to them States differ; and there is apt to be dif-
ference of view in the same States at different times; and at the
same time a different definition of taxable net income for different
classes of taxpayers. Obviously such differences in detail do not
render obnoxious to the commerce clause a state income tax which
is otherwise unobjectionable.

[7] *Kansas City Southern Ry. Co. v. United States,* 231 U. S. 423;
*Interstate Commerce Commission v. Goodrich Transit Co.,* 224 U. S.
194. Also *Illinois Central R. R. Co. v. Interstate Commerce Com-
mission,* 206 U. S. 441, 461, 462; *Union Pacific R. R. Co. v. United
States,* 99 U. S. 402, 420, 427.

It is said that, since the statute in ascertaining net income purports to follow the standard form of accounts prescribed by the Interstate Commerce Commission, but in fact departs therefrom, the statute invades the province of Congress and conflicts with the policy expressed in Transportation Act, 1920. There is in fact no such divergence in the accounting. But if there had been, it would not follow that every departure from the Commission's standard classification would render unconstitutional a state income tax act. The function of determining whether a tax burdens interstate commerce was not conferred upon the Commission. Its sole function is the regulation of carriers. For this purpose it has been empowered by Congress to require of them a uniform system of accounting. The financial results of their operations as therein disclosed are useful for many purposes. But they are not made conclusive for all. Moreover, the Commission's standard form is not immutable. Railway accounting is in process of development.[8]

*Second.* The contention that the statute is obnoxious to the equal protection clause rests upon the argument that the State's definition of net income of public service corporations (including railroads) is arbitrary. It is alleged to be arbitrary because it allows to other corporations and to individuals, certain deductions which

[8] See *Groesbeck* v. *Duluth, South Shore & Atlantic Ry. Co.,* 250 U. S. 607, 614; 3 I. C. C. 289, 343. Power to prescribe a mandatory accounting system was first conferred upon the Commission by the Hepburn Act (June 29, 1906, c. 3591, § 7, 34 Stat. 584, 593). In 1888 a recommendatory classification of operating revenues, expenses and charges was issued by the Commission; and between that date and 1908 the form was revised from time to time. On June 1, 1908, the Commission ordered carriers to make reports in the form prescribed and furnished by the Commission. Thereafter changes continued to be made from time to time. A comprehensive and detailed classification of income accounts was issued effective July 1, 1912. This was superseded by the revised classification effective July 1, 1914, which is now in force.

are denied to public service corporations; namely, interest on funded debt, rentals, and certain worthless debts (§ 306, pars. 2, 3, 6 and 7). That the differentiation results from the difference in the subject of the tax and, hence, is not arbitrary has been pointed out above. But, in any event, the differentiation would not render the statute unconstitutional. The State might, consistently with the equal protection clause, have subjected only public service corporations to the income tax, or it might have laid upon them a higher income tax than upon others; as it laid upon railroads a higher franchise tax than it did upon other corporations. Compare *Southern Ry. Co.* v. *Watts,* 260 U. S. 519.

The classification is also assailed as arbitrary on the ground that § 202 defining net income applies only to corporations required to keep records " according to the standard classification of accounting of the Interstate Commerce Commission "; that there are in the State corporations which are not required by law to keep their accounts according to the Commission's form, but which own railroads of standard gauge operated by steam, and have obtained authority to act as limited common carriers. In support of this contention, two railroads with short lines are instanced. They are owned by lumber companies and are taxed, not as railroads, but as if part of the lumber corporation. So far as appears the North Carolina authorities might require them to file accounts according to the Commission's classification, if they deemed this advisable. But obviously the State might reasonably classify such railroads differently from ordinary carriers.

*Third.* The claim that the statute violates the state constitution rests mainly on the contention that the tax is not upon the net income.[9] As shown above, the assump-

---

[9] The provision is: " The general assembly may also tax . . . incomes provided the rate . . . shall not . . . exceed six per cent., and there . . . shall be allowed . . . deductions . . . so that only net incomes are taxed."

tion is erroneous.  Only the net income of the property operated as a utility is taxed.  There is nothing in the constitution of the State which precludes taxing the net income of the property so operated, as distinguished from the net income of the company.  There is no inconsistency between §§ 101 and 202 of the statute.  It would seem from the decisions of the Supreme Court of North Carolina that the uniformity clause applies to income taxation; but that court has repeatedly held that the uniformity clause does not prevent reasonable classification.[10]  The contention that the uniformity clause is violated because the permissible deductions in the case of public service corporations are different from (and not so great as), those allowed individuals or other corporations [11] is unfounded, for reasons stated above.  So is the contention that the statute is retroactive and void, because it was not enacted until March, 1922, but lays a tax based upon the net income of the calendar year.

On behalf of the State it was urged that the bill was properly dismissed by the District Court because there is under the laws of North Carolina a plain, adequate, and

---

[10] *Smith* v. *Wilkins,* 164 N. C. 135; *Caldwell Land & Lumber Co.* v. *Smith,* 151 N. C. 70; *Lacy* v. *Packing Co.,* 134 N. C. 567; *Gatlin* v. *Tarboro,* 78 N. C. 119.  Compare *State* v. *Williams,* 158 N. C. 610; *State* v. *Moore,* 113 N. C. 697; *Worth* v. *Railroad,* 89 N. C. 291.

[11] Every corporation is allowed to deduct from gross income all operating expenses,—that is, the disbursements incident to the life and the conduct of its business.  But the individual is not permitted to deduct from gross income any part of his living expenses (except so far as they may be covered by the exemption).  Railroads and other public corporations are allowed to deduct, as an operating expense, the cost of tools and small equipment.  Individuals and other corporations are not.  Ordinary corporations and individuals are allowed to deduct rentals and interest paid.  Compare the limited deduction for interest paid under the Federal Corporation Tax Act.  *Anderson* v. *Forty-two Broadway Co.,* 239 U. S. 69; *New York, New Haven & Hartford R. R. Co.* v. *United States,* 269 Fed. 907.

complete remedy at law by which a taxpayer may recover the amount of an illegal tax paid by him under protest. Our attention has been called to several North Carolina cases and statutes bearing upon this contention. But the statute mainly relied upon is a recent one which appears not to have been construed and applied by the highest court of the State. In the absence of such decision, we cannot say the remedy at law is plain and adequate. *Dawson* v. *Kentucky Distilleries & Warehouse Co.*, 255 U. S. 288, 296; *Wallace* v. *Hines*, 253 U. S. 66, 68; *Shaffer* v. *Carter*, 252 U. S. 37, 47; *Union Pacific R. R. Co.* v. *Weld County*, 247 U. S. 282; *Davis* v. *Wakelee*, 156 U. S. 680, 688. We have therefore passed upon the merits.

*Affirmed.*