**GROSVENOR–DALE CO. v. BITGOOD, Acting Collector of Internal Revenue.**

**FLOYD CRANSKA CO. v. SAME.**

**HARTFORD PROVISION CO. v. SAME.**

Nos. 2479, 2480, 2478.

District Court, D. Connecticut.

Sept. 26, 1935.

On Rehearing Oct. 16, 1935.

Swan, Keeney & Smith, of Providence, R. I., for Grosvenor-Dale Co.

Robinson, Robinson & Cole, of Hartford, Conn. (Lucius F. Robinson, Jr., of Hartford, Conn., of counsel), for Floyd Cranska Co.

Samuel Steinberg, of Hartford, Conn., for Hartford Provision Co.

Robert P. Butler, U. S. Atty., and George H.. Cohen, Asst. U. S. Atty., both of Hartford, Conn., and James E. Murphy, Department of Justice, Washington, D. C., for Collector of Internal Revenue.

HINCKS, District Judge.

These cases come before the court upon petitions for preliminary injunctions restraining the collection of process taxes, etc., under the Agricultural Adjustment Act, as amended (7 USCA § 601 et seq.). In each case, the defendant has moved to dismiss the bill on the ground (inter alia) that the court is without jurisdiction to grant the relief sought. Precisely the same questions are involved as those upon which I ruled in my memorandum in the cases of Baltic Mills Co. v. Bitgood and Powdrell & Alexander, Inc., v. Bitgood (D. C.) 12 F. Supp. 132, under date of August 28, 1935, except that the Baltic Mills Co. and Powdrell & Alexander Cases were brought before the approval of the recent amendment (H. R. 8492, 74th Congress, approved August 24, 1935) to the Agricultural Adjustment Act (hereinafter referred to as "AAA"). The government, however, has again argued the questions involved, asking that I reconsider the conclusions expressed in my memorandum in the Baltic Cases.

The government again points to R. S. § 3224 (26 USCA § 1543), which provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court." But the intent and scope of that statutory provision must be ascertained in the light of its history. It first appeared in the U. S. Statutes in section 10 of the Act of March 2, 1867, c. 169, 14 Stat. 475. But that statute, by its express terms, was an amendment of the Internal Revenue Act of July 13, 1866, c. 184, 14 Stat. 152. And this Revenue Act contained express provision for the recovery at law of taxes erroneously or illegally assessed or collected. It was not until later, when the Revised Statutes were first published, that what now appears as R. S. § 3224 (26 USCA § 1543) took on the form of an independent statutory provision. It has accordingly been determined that by reason of its genesis this "addition of 1867 (now R. S. § 3224) was in pari materia with the previous part of" section 19 of the Revenue Act of 1866, which, as we have seen, contemplated an unqualified right of recovery of taxes shown to be illegally exacted. Snyder v. Marks, 109 U. S. 189, 3 S. Ct. 157, 160, 27 L. Ed. 901. "The remedy of a suit to recover back the tax after it is paid is provided by statute, and a suit to restrain its collection is forbidden. The remedy so given is exclusive, and no other remedy can be substituted for it. * * * The system prescribed by the United States in regard to both customs duties and internal revenue taxes, of stringent measures, not judicial, to collect them, with appeals to specified tribunals, and suits to recover back moneys illegally exacted, was a system of corrective justice intended to be complete, and enacted under the right belonging to the government to prescribe the conditions on which it would subject itself to the judgment of the courts in the collection of its revenues." Snyder v. Marks, supra.

Thus R. S. § 3224 (26 USCA § 1543), being in its origin amendatory of a Revenue Act wherein an adequate remedy at law was provided, meant only that the remedy at law should be exclusive, not that equity should be withheld from suitors who were without an adequate remedy at law. Miller v. Standard Nut Margarine Co., 284 U. S. 498, 52 S. Ct. 260, 76 L. Ed. 422; Hill v. Wallace, 259 U. S. 44, 42 S. Ct. 453, 66 L. Ed. 822.

In my decision in the Baltic Mills Co. Case, I held that the remedy at law under the amendment to the Agricultural Adjustment Act was in effect wholly inadequate in the eyes of equity. I have been strengthened in that conclusion by the inability of learned and ingenious counsel for the government in similar

cases thereafter argued to suggest any conceivable method of proof whereby a claimant, be he processor, vendee, or consumer, who had in fact borne the burden of the tax, could demonstrate, or even ascertain, that fact. It appears to me that Congress, in its zeal to prevent the unjust enrichment of a taxpayer who may pass on to another the burden of the tax, has in practical effect, by interposing impossible conditions of proof, denied recovery to all who really bear the burden; as a result, it would appear that the government is in a position to retain the fruits of illegal exactions against all comers. And I still feel that Congress, by the enactment which is now R. S. § 3224, never intended that the courts should withhold from plaintiffs, in such plight as these, the injunctive relief which for generations has constituted a vital and beneficent element of our jurisprudence.

But these cases do not turn solely upon R. S. § 3224. The government now calls attention to that part of the recent amendment to the AAA, wherein it was enacted:

"Sec. 30. The Agricultural Adjustment Act, as amended, is amended by adding after section 20 the following new section:

"'Sec. 21. (a) No · suit, action, or proceeding (including probate, administration, receivership, and bankruptcy proceedings) shall be brought or maintained in any court if such suit, action, or proceeding is for the purpose or has the effect (1) of preventing or restraining the assessment or collection of any tax imposed or the amount of any penalty or interest accrued under this title on or after the date of the adoption of this amendment.'" Agricultural Adjustment Act § 21 (a), as added by Act Aug. 24, 1935, § 30 (7 USCA § 623 (a).

The presence of this provision in the amendment raises grave questions. It will not lightly be held that Congress by this enactment intended to destroy an equitable power which came to the federal courts as an inheritance of the centuries and has there found shelter ever since the birth of the nation. Moreover, if, as the government contends, the federal courts are now shorn of this equitable power, further questions will eventually arise under the Removal Act, 28 USCA § 71. For by that statute, the only cases removable to the federal courts are those "of which the district courts of the United States are given" jurisdiction. See Cates v. Allen, 149 U. S. 451, 13 S. Ct. 883, 37 L. Ed. 804; In re Winn, 213 U. S. 458, 29 S. Ct. 515, 53 L. Ed. 873; Ex parte Wisner, 203 U. S. ·449, 27 S. Ct. 150, 51 L. Ed. 264.

Nevertheless, the prohibition of the amendment against injunctive relief must be construed as in pari materia with the other provisions of the AAA as amended, including the amended section 21 (a), narrowing the broad right of recovery at law theretofore provided. See R. S. § 3226, as amended, 26 USCA § 156 (see 26 USCA §§ 1672–1673). Snyder v. Marks, supra. It must also, I think, be construed in the light of the fact that at the time of its enactment a multitude of suits throughout the country were being brought to the federal courts to restrain the collection of process taxes, etc. If it had been the congressional intent to leave to the courts the power to administer equity in accordance with its established principles, there was no need to include in the amended act, section 21 (a), a provision which in words appears to be but a reenactment of R. S. § 3224 (26 USCA § 1543). I can only conclude that the AAA as amended, section 21 (a), was intended to destroy an equitable power theretofore existing, and that hereafter, the court, irrespective of the inadequacy of the remedy at law, is without jurisdiction to do equity in such cases.

It is, to be sure, well established in federal equity jurisprudence that a federal court will restrain collection of a state tax if the remedy available to the taxpayer under the state law is uncertain or debatable, Union Pac. R. Co. v. Board of Com'rs of Weld County, 247 U. S. 282, 38 S. Ct. 510, 62 L. Ed. 1110; or has not been construed and applied by the highest court of the state. Atlantic Coast Line R. Co. v. Daughton, 262 U. S. 413, 43 S. Ct. 620, 67 L. Ed. 1051. But such doctrine has no application here. For if, as I hold, the equitable power which plaintiffs invoke is dead, it is idle to discuss the fulness which it may have had in life.

The petitions for preliminary injunctions will therefore be denied, and the defendant's motions to dismiss each bill must be granted.

### On Rehearing.

These cases are again before the court, now upon plaintiffs' motions for rehearing. By my memorandum of September 26th, I ruled that R. S. § 3224 .(26 USCA § 1543) was inapplicable, but that section 21 (a) of the Amendment to the AAA of August 24, 1935 (7 USCA § 623 (a), operated to deprive the court of jurisdiction. Section 21 (a) was not discussed in the original argument, since at that time the government's reliance was on R. S. § 3224. Under these circumstances, clearly the plaintiffs are entitled to rehearing upon the narrow question as to whether section 21 (a) precludes equitable relief with respect to processing taxes imposed before August 24, 1935.

█ Section 21 (a), or so much thereof as is applicable for present purposes, is as follows: "Sec. 21. (a) No suit, action, or proceeding (including probate, administration, receivership, and bankruptcy proceedings) shall be brought or maintained in any court if such suit, action, or proceeding is for the purpose or has the effect (1) of preventing or restraining the assessment or collection of any tax imposed or the amount of any penalty or interest accrued under this title on or after the date of the adoption of this amendment." The limiting phrase therein contained, "on or after the adoption of this amendment," must be construed as modifying the "tax imposed." For the legislative history of the section shows that it was never intended to have application to processing taxes imposed prior to the date of the amendment. H. R. 8492, 74th Cong., 1st Sess.; House Report No. 1241, p. 20; Senate Report, No. 1011, p. 23.

And if the amendment is subjected to the process of internal construction, the same conclusion is indicated. For section 21 (d), 7 USCA § 623 (d), which imposes limitations upon the recovery at law of taxes illegally exacted, is by express terms made applicable to taxes "which accrued before, on, or after the date of the adoption of this amendment." When this language is contrasted with that of section 21 (a), it is apparent that by the latter paragraph Congress had no intention to curtail the equitable jurisdiction of the courts with respect to taxes imposed before the amendment.

█ The amended complaints show that the plaintiffs seek relief with respect to taxes "imposed" before as well as after the effective date of the amendment. The act, in section 9 (a), as amended (7 USCA § 609 (a), provides: "The processing tax shall be levied, assessed, and collected upon the first domestic processing." This language has been construed by regulations 81, article 7, to mean that "The tax is imposed upon the first domestic processing." And article 8 of regulations 81 prescribes that "liability for the tax attaches to the processor upon the first domestic processing." And the Internal Revenue Department has ruled that the tax attaches upon the first domestic processing, even though the commodity subsequently be destroyed. Tax Ruling XIV-37-7692, P. T. 32, Int. Rev. Bulletin XIV-37, p. 13 (September 16, 1935). Tax Ruling, XIII-23-6837, P. T. 10; XIII-1 C. B. 452. And so, notwithstanding the fact that the taxes are not payable until ninety days after the filing of the return, regulations 81, article 12 (as amended by T. B. 4568, July 18, 1935), it must be held that within the meaning of section 21 (a) the taxes are "imposed" upon the first domestic processing.

It follows that the orders entered herein on September 26, 1935, dismissing the bills for lack of jurisdiction, must be vacated, and the petitions for preliminary injunctions in so far as applicable to taxes imposed before August 24, 1935, must be granted, but in other respects denied.