## TEXAS & P. RY. CO. v. KUTEMAN.

(Circuit Court of Appeals, Fifth Circuit. November Term, 1892.)

### No. 86.

1. FEDERAL COURTS—INJUNCTION—THREATENED SUITS IN STATE COURT.
    A federal court is not prohibited by Rev. St. § 720, from issuing an injunction to restrain the prosecution in a state court of a multiplicity of threatened suits which have not been actually begun.

2. SAME—JURISDICTIONAL AMOUNT.
    In a suit by a railroad company for injunction to restrain a shipper from prosecuting in a state court a multiplicity of suits for overcharge in freight, the maintenance of the scheduled rate under which the charges were made is the real subject of dispute, and the value of such maintenance determines the jurisdictional amount of the controversy. Where such

value is not liquidated or fixed by law, the alleged value is conclusive on demurrer to the bill.

3. RAILROAD COMPANIES—OVERCHARGE—LONG AND SHORT HAUL—TEXAS STATUTE.

The making of a "group rate," or the charging of the same price for a shorter as for a longer haul, is not within the provisions of Rev. St. Tex. art. 4257, prohibiting the charging of one shipper a greater rate than another for the same or a shorter haul. Railroad Co. v. Kuteman, 14 S. W. Rep. 693, 79 Tex. 465, distinguished.

4. SAME—MULTIPLICITY OF SUITS—INJUNCTION—ADEQUATE REMEDY AT LAW.

A railroad company which is threatened with separate suits under the Texas law before a justice of the peace for every car load as to which overcharge is alleged, has no adequate remedy at law, and may obtain an injunction to restrain the prosecution of such suits. Railroad Co. v. Dowe, 7 S. W. Rep. 368, 70 Tex. 5, followed.

5. SAME—PLEADING.

In such a case, a bill alleging that complainant has a good defense to each and all of such suits, and that its rates are necessary, just, and wholesome, presents an issue of fact for the determination of which testimony must be taken, and is sufficient to withstand a demurrer, except as to suits already begun in the justice's court. Railroad Co. v. Dowe, 7 S. W. Rep. 368, 70 Tex. 5, followed.

Appeal from United States Circuit Court, Eastern District of Texas.

In Equity. Bill by the Texas & Pacific Railway Company to restrain R. B. Kuteman from prosecuting certain suits in a state court. A demurrer to the bill was sustained, and the bill dismissed. Complainant appeals. Reversed.

W. W. Howe, S. S. Prentiss, R. S. Lovett, and T. J. Freeman, for appellant.

H. Chilton, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

McCORMICK, Circuit Judge. The Texas & Pacific Railway Company, the appellant, exhibited its bill to one of the judges of the circuit court for the eastern district of Texas against the appellee, R. B. Kuteman, showing that appellant was operating a line or lines of railroad in Texas and Louisiana, penetrating the pine-growing and lumber-producing regions in those states, and extending beyond these into the western part of Texas, where no lumber is produced, but much is needed and used. That no lumber mills are operated on appellant's lines west of Mineola, and that appellant had adopted and was charging on all lumber shipments made or received on its line from all points east of Mineola on its railroad to the Texas state line, to be carried west of Mineola, what is known as a "group rate." That the group rate to Dallas, Tex., to which appellee's shipments were chiefly made, is 20 cents a hundred pounds in car-load lots. That said rate is much below the maximum prescribed by law. That it is reasonable and just, and a group rate is necessary to develop the lumber production in the pine region, and to fairly furnish the western market, and to increase the traffic on appellant's

road. That no greater charge is made for hauling a shorter distance than a longer, and that making the same charge for the shorter as for the longer distance in the case stated prevents an unjust and oppressive discrimination against the producers of lumber in eastern Texas and the consumers of and dealers in lumber in the western and other parts of the state, where lumber is not produced. That the appellee has mills at and near Lake Fork, the most western point east of Mineola where lumber is received by appellant, and he claims that he should be given a lower rate than the rate charged on shipments made at points further east, in proportion to the respective length of the haul, substantially claiming that any rate but a mileage rate unjustly discriminates against him. Claiming further that 12½ cents a hundred pounds for lumber in car loads is the highest rate that is reasonable on shipments from his mills to Dallas, and that the difference between this and 20 cents, charged by appellant, is the measure of the unjust discrimination made against him by appellant. That appellee has already brought five suits against the appellant on account of shipments made, and threatens to bring and to induce others to bring many more. That appellee's practice heretofore has been, and his threatened plan is, to sue on each separate car-load shipment, or on only such a number as that the amount claimed by him in each suit will be below the amount necessary to permit the appellant to appeal to a court of last resort, or to one in which a judge or judges learned in the law sit; and that the local judges of the inferior courts in which appellee's suits have been brought and are threatened to be brought, and of the only court to which they can be appealed, are not required by law to be learned in the law, and in fact are not so learned. That they have so far disregarded appellant's defenses, and have given judgment against appellant, which appellant either has paid or will have to pay, and that appellee boasts—by no means extravagantly—that these ignorant or prejudiced judges will continue to give judgment against appellant in the numerous cases threatened; thus practically enforcing a rebate in favor of the appellee on all of his shipments, without appellant having any remedy or power to prevent it by any proceeding at law. That since July 1, 1889, appellee has shipped 105 car loads of lumber from Lake Fork to Dallas or other points west of Mineola. That he is a continuous, constant shipper, and that he claims a reduction of the rate charges on each car, averaging between $15 and $35, for which he avows his purpose to sue, which, if enforced, will injure appellant more than $5,000 per annum. And that appellant's right to fix such rate is of the value of more than $10,000. Prayer is made for injunction and for general relief.

On May 3, 1890, the judge ordered:

"On consideration of the foregoing bill it is ordered that the same be filed and served by copy upon R. B. Kuteman, with usual subpoena. It is further ordered that the said defendant, R. B. Kuteman, do show cause, on Monday, the 12th day of May, at 11 o'clock A. M., or as soon thereafter as counsel can be heard, before the circuit court for this district, at Tyler, why the injunction pendente lite prayed for in said bill should not issue; and in the mean time let a restraining order issue enjoining and prohibiting the said defend-

ant from instituting or prosecuting the action described in said bill until further order of the court."

It does not appear when notice of this order or process of subpoena was served on the defendant. On September 10, 1890, there was filed what is labeled, "Answer to Order to Show Cause." On September 17th was filed the defendant's demurrer to complainant's bill, stating the grounds:

"(1) That the same is wholly insufficient, and the facts stated therein show no cause of action; (2) that the circuit court of the United States has no jurisdiction to issue a writ of injunction against proceedings in the state courts; (3) that the amount involved is not sufficient to give the circuit court of the United States jurisdiction of complainant's bill; (4) that the penalties or suits which complainant alleges to be threatened by respondent are quasi criminal and statutory, and the United States court has no jurisdiction to enforce or restrain them."

No further action of the circuit court or of any of its judges appears in the case until September 12, 1892, on which day the decree appealed from was passed in these terms:

"This cause came on to be heard at this term, and was argued by counsel for the plaintiff and the defendant, and thereupon, upon consideration thereof, it was ordered, adjudged, and decreed as follows: That the demurrers filed by defendant herein on September 17, 1890, and put in to the whole of the plaintiff's bill, be held good and sufficient, and that the injunction or restraining order heretofore granted do stand dissolved, and that said demurrers be sustained, and the bill dismissed. It is further ordered, adjudged, and decreed that said plaintiff, the Texas & Pacific Railway Company, take nothing by this suit, and that said defendant, R. B. Kuteman, go hence without day, and recover of plaintiff all costs in this behalf expended, which costs may be taxed by the clerk, and for which execution may issue."

The appeal was duly allowed and perfected, and the appellant contends that the circuit court erred in sustaining the demurrers of defendant, and dissolving the injunction theretofore granted, and dismissing complainant's bill. The appellee contends that the demurrers were properly sustained and the bill dismissed, and submits these propositions:

"(1) The federal courts are not authorized to restrain proceedings in state courts, except to sustain a first-acquired federal jurisdiction; and the preliminary injunction herein was properly dissolved, and demurrer sustained. (2) The demurrer was properly sustained, because the amount in controversy was less than the sum necessary to give federal court jurisdiction. (3) Plaintiff's bill lacked equity, in that a legal remedy existed in its behalf by consolidation of the suits in justice's court. (4) That under the statute of Texas regulating railroad rates the railway company was liable to Kuteman for unjust discrimination, and complainant's bill showed no cause of action against him. (5) That the preliminary injunction was properly dissolved, because of the answer of defendant denying the allegations that he intended to bring suit for discrimination on 105 cars of lumber, and charging that there were not more than five of such cars. (6) That the injunction was properly dissolved, because the matters of controversy set up in complainant's bill were shown by the defendant's answer to have been already adjudicated adversely to complainant in the state court."

It is not clear that the bill in this case seeks to stay or enjoin any pending proceedings in state courts, though the language of the prayer that the defendant be enjoined "from instituting or prosecuting such action pending this cause" is susceptible of that construction. Mani-

festly the chief purpose was to prevent the further institution of the many threatened suits, and, if the plaintiff sought relief as to suits already brought, as well as to suits threatened, the two purposes and prayers are not so united or dependent that they must stand or fall together. The language of the statute is plain, and the decisions uniform, that, with the exception named in the statute, a writ of injunction shall not be granted to stay pending proceedings in any court of a state. Rev. St. U. S. § 720; Diggs v. Wolcott, 4 Cranch, 179; Peck v. Jenness, 7 How. 620; Haines v. Carpenter, 91 U. S. 255; Dial v. Reynolds, 96 U. S. 340; The Mamie, 110 U. S. 742, 4 Sup. Ct. Rep. 194; Dillon v. Railway Co., 43 Fed. Rep. 109. These cases all relate to the stay of proceedings begun in the courts of a state before any resort was had to the United States courts by parties whose citizenship gave the national courts concurrent jurisdiction of the parties and the subject-matter. In Fisk v. Railway Co., 10 Blatchf. 520, Judge Blatchford says:

"The provision of section 5 of the act of March 2, 1793, that a writ of injunction shall not be granted to stay proceedings in any court of a state, has never been held to have, and cannot properly be construed to have, any application except to proceedings commenced in a state court before the proceedings are commenced in the federal court; otherwise, after suit brought in a federal court, a party defendant could, by resorting to a suit in a state court, defeat, in many ways, the effective jurisdiction and action of the federal court after it had obtained full jurisdiction of person and subject-matter. Moreover, the provision of the act of 1793 (now section 720, Rev. St.) must be construed in connection with the provision of section 14 of the act of September 24, 1789, that the federal courts shall have power to issue all writs which may be necessary for the exercise of their respective jurisdictions. 1 U. S. St. at Large, pp. 81, 82." Section 716, Rev. St. U. S.

This is cited with approval by Judge Field in Sharon v. Terry, 36 Fed. Rep. 365. It is in harmony with French v. Hay, 22 Wall. 250, and Dietzsch v. Huidekoper, 103 U. S. 494, and appears to be substantially conceded by the terms of appellee's first proposition. This being so, as to all suits threatened, no proceeding having begun as to them in any court prior to the filing of appellant's bill, the exhibiting the bill in the circuit court, if jurisdiction otherwise is shown, gives that court "a first-acquired federal jurisdiction," to which section 720 cannot reasonably be applied. Nor does it make the case different that the only relief the appellant needs or seeks is a permanent injunction against the institution of a multiplicity of suits which the appellee is threatening to bring in a state court. When the United States courts acquire jurisdiction of the parties and of the subject-matter, so far as acquired, the jurisdiction is complete. "There is not in our system anything so unseemly as rivalry and contention between the courts of the state and the courts of the United States," (Sharon v. Terry, supra,) and in a case where the circuit court would have jurisdiction to enjoin a party from bringing a multiplicity of suits which he was threatening to bring in the United States courts, and should exercise that jurisdiction, it is manifest how inadequate the relief would be if the party enjoined was left free to institute proceedings on the same cause of action in a state court having concurrent jurisdiction. It seems clear to us that no such element of weakness affects the jurisdiction of the United States courts; that

in a proper case for injunction, of which, by reason of the subject-matter or of the citizenship of the parties, the United States courts have jurisdiction, the injunction may issue, and will be effectual to prevent the institution of a multiplicity of suits, or of any suit, in any other court; and that there is drawn to the court, otherwise properly issuing the injunction, the consideration of and jurisdiction over the whole subject-matter on account of which or out of which said suits are apprehended.

Is the subject-matter of this suit of sufficient value to support the jurisdiction of the circuit court? The bill charges that the defendant has often and notoriously avowed and declared, and still avows and declares, that he will sue the complainant to recover sums of money averaging between $15 and $35 for each car of lumber heretofore or hereafter shipped by him over its railway; that since the 1st of July, 1889, defendant had, up to the filing of complainant's bill, May 5, 1890, shipped 105 cars; that defendant is engaged in the lumber business at Lake Fork station, and continues and will continue to ship lumber therefrom to points west of Lake Fork. In the letter of the defendant attached to complainant's pleadings and made a part of its bill, he claims an overcharge on one car of $24. Taking that as an average, and deducting the $488.15 already sued for in the state courts, would give the amount of $2,031.85. But the complainant also avers that the rates established and charged by it are not one half so much as the maximum rate it is authorized by law to charge; that it is reasonable, fair, and just, and that complainant's right to establish and maintain such rate is a valuable one, and of the value of more than $10,000. In a suit for an injunction the amount in dispute is the value of the object to be gained by the bill. Fost. Fed. Pr. § 16. An injunction may be of much greater value to the complainant than the amount in controversy in cases of dispute which have already arisen. Symonds v. Greene, 28 Fed. Rep. 834; Whitman v. Hubbell, 30 Fed. Rep. 81. The maintenance of its rates is the real subject of dispute, and the object of the bill and the value of this object must be considered. Railroad Co. v. Ward, 2 Black, 485. This value not being liquidated or fixed by law, the alleged value, especially on demurrer to the bill, must govern.

On the allegations of appellant's bill, was it liable to Kuteman for unjust discrimination under the statute of Texas? Appellee so contends, and cites the statute relied on, and the case of Railway Co. v. Kuteman, 79 Tex. 465, 14 S. W. Rep. 693. The case cited does not support this contention. So much of article 4257 of the Revised Statutes of Texas as was drawn in question in that case is quoted in the opinion, and thereon the court says:

"We cannot agree with appellant in its contention that it is only where the freight is being transported between the same points that the prohibition against charging more for a less distance than a greater one applies."

No question of group rates, or the charging of the same for a less as for a greater distance is here touched on. The case was not decided on any construction of the statutes, but was made to rest entirely on the view that the appellant in that case had an adequate

remedy at law, and that the injunction was on that account rightly refused. The whole section cited reads as follows:

"Railroad companies may charge and receive not exceeding the rate of 50 cents per 100 pounds per 100 miles for the transportation of freight over their roads; but the charges for transportation on each class or kind of freight shall be uniform, and no unjust discrimination in the rates or charges for the transportation of any freight shall be made against any person or place on any railroad in this state, and it shall be prima facie evidence of an unjust discrimination for any railroad company to demand or receive from one person, firm, or company a greater compensation than from another for the transportation in this state of any freight of the same kind or class in equal or greater quantities for the same or a less distance, which prima facie evidence may be rebutted by competent testimony on the part of such company, showing that the discrimination, if any, was not an unjust one, and the question upon an issue as to whether any alleged discrimination is unjust or not shall be a question of fact to be tried and determined as any other issue of fact in a case: provided, that when the distance from the place of shipment to the point of destination of any freight is 50 miles or less, a charge not exceeding 30 cents per 100 pounds may be made for the transportation thereof."

It seems clear to us that whether the rate charged by appellant, as shown by its bill, is an unjust discrimination against appellee under the law above quoted, is a question of fact to be solved in the prescribed way on issue joined and proofs taken, and is not apparent as matter of law on the face of the pleadings challenged by the demurrer of appellee.

The case of Railway Co. v. Dowe, 70 Tex. 5, 7 S. W. Rep. 368, is conclusive authority against appellee's third proposition.

The fifth and sixth propositions need no further notice than to recall the fact that the defendant has not answered the bill,—has not been required to answer,—as his demurrer to the bill was sustained and the bill dismissed. Was there error in this action of the circuit court? What we have already said disposes of the special grounds of the demurrer, and leaves only the question whether the appellant in its bill presents a case that warrants the issuance of the injunction sought against the further institution of the threatened suits? We are of opinion that the case of Railway Co. v. Dowe, supra, and the authorities therein cited and approved, fully warrant the granting of an injunction to stay the institution of such a multiplicity of suits if the appellant shows that it has a good defense to each and all of them. The appellant so alleged in its bill, and says that, so far as it may be held that its rate on lumber discriminates against the defendant or any shipper, it is a just, necessary, and wholesome discrimination; thus presenting an issue of fact which the court cannot determine without the taking of testimony. We are of opinion that the court erred in sustaining the demurrer to the whole bill, and in dissolving wholly the restraining order, and in dismissing the bill; that the demurrer should have been sustained so far as the bill may seek to stay the prosecution of suits begun in the state courts before the granting of the restraining order in this case, and that said restraining order should have been construed, and, if deemed necessary, should have been so amended, as to restrain only the institution of suits after the granting of said order, and the bill should have been

retained to proceed to final hearing according to the rules and settled practice of equity proceedings in the United States courts.

It is therefore ordered that the decree appealed from is reversed, and the cause is remanded to the circuit court, to be proceeded with in accordance with the views expressed in the foregoing opinion.