12604

MONARCH MILLS v. SOUTH CAROLINA TAX COMMISSION ET AL.

(146 S. E., 870)

220

*Messrs. Grier, Park & McDonald,* for petitioner, ▉

*Attorney General John M. Daniel,* and *Mr. Fraser Lyon,* for respondents, ▉

February 26, 1929.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

This is a controversy without action, under the provisions of Section 675 of Volume 1 of the Code of 1922. The agreed statement of facts will be reported.

The questions for decision by this Court are: Is the petitioner entitled to interest on the amount of taxes refunded to it by the order of the South Carolina Tax Commission, and has the Tax Commission authority to draw on the State treasurer for such refund?

The argument of the attorneys for the respondents sets forth sufficiently, and to the entire satisfaction of this Court, what we consider to be the proper answers to the questions. Accordingly, we have adopted it as our opinion.

Notwithstanding the recent case of *Paris Mountain Water Co. v. Woodside*, 133 S. C., 383, 131 S. E., 37, the following authorities show sufficient reason for our refusing to hold the petitioner entitled to the order it seeks:

In reading the authorities, it should be kept in mind that there is no statute by which this State engages to pay interest in this case and there is no statutory authority authorizing its officers to engage to do so.

"Interest, when not stipulated for by contract or authorized by statute, is allowed by the Courts as damages for the detention of money or of property, or of compensation, to which the plaintiff is entitled, and, as has been settled on grounds of public convenience, is not to be awarded against a sovereign government unless its consent to pay interest has been manifested by an Act of its Legislature, or by a lawful contract of its executive officers. *U. S. v. Sherman*, 98 U. S., 565 [25 L. Ed., 235]; *U. S. v. Bayard*, 127 U. S., 251, 260, 8 S. Ct., 1156 [32 L. Ed., 159], and authorities there collected; *in re Gosman*, L. R., 17 Ch. Div., 771. In *Gossman's case*, just cited, where the personal property of a deceased person had been taken possession of by the crown for want of known next of kin, and was afterwards recovered by petition of right by persons proved to be the next of kin, who claimed interest for the time the crown held the property, Sir George Jessel, M. R., speaking for the Court of Appeal, summed up the law of England in this short judg-

ment: 'There is no ground for charging the crown with interest. Interest is only payable by statute or by contract.' In *U. S. v. Sherman,* the Circuit Court of the United States for the district of South Carolina had certified that there was probable cause for an Act done by an officer of the United States, for which judgment had been recovered against him in that Court; and consequently, by express Acts of Congress, 'the amount so recovered' was to 'be provided for and paid out of the proper appropriation from the treasury.' Acts March 3, 1863, c. 76, § 12 (12 St., 741); July 28, 1866, c. 298, § 8 (14 St., 329). This Court held that the judgment creditor was entitled to received from the United States the amount of the judgment only, without interest; and Mr. Justice Strong, in delivering the opinion, said: 'When the certificate is given, the claim of the plaintiff in the suit is practically converted into a claim against the government, but not until then. Before that time the government is under no obligation, and the Secretary of the Treasury is not at liberty, to pay. When the obligation arises, it is an obligation to pay the amount recovered; that is, the amount for which judgment has been given. The Act of Congress says not a word about interest. Judgments it is true, are by the law of South Carolina, as well as by Federal legislation, declared to bear interest. Such legislation, however, has no application to the government, and the interest is no part of the amount recovered. It accrues only after the recovery has been had. Moreover whenever interest is allowed, either by statute or by common law, except in cases where there has been a contract to pay interest, it is allowed for delay or default of the debtor. But delay or default cannot be attributed to the government. It is presumed to be always ready to pay what it owes.' 98 U. S., 567, 568 [25 L. Ed., 235], * * * and for which interest there were no coupons to be surrendered, it cannot be allowed such an effect, because the State of North Carolina has never authorized its officers to incur any such obligation in its behalf." *United States v. State of North Carolina,* 136 U. S., 211, 10 S. Ct., 920, 34

L. Ed., 336. See, also, *United States v. North American Transportation & Trading Co.,* 253 U. S., 330, 40 S. Ct., 521, 64 L. Ed., 935; *United States v. Rogers,* 255 U. S., 163, 41 S. Ct., 281, 65 L. Ed., 566; *United States v. Brown,* 263 U. S., 78 , 44 S. Ct., 92, 68 L. Ed., 171; *Tillson v. U. S.,* · 100 U. S., 43, 25 L. Ed., 543.

"The rule is that, in the absence of a stipulation to pay interest or a statute allowing it, none can be recovered against the United States upon unpaid accounts or claims." *Seaboard Railroad Co. v. U. S.,* 261 U. S., 299, 304, 43 S. Ct., 354, 355 (67 L. Ed., 664).

"The contract of a state with respect to the payment of interest is governed by a different rule from that which prevails in cases of contracts of citizens, for where there is no promise to pay interest a state is exempt. And so in the absence of legislative authorization a state is not liable for interest on state bonds, after maturity. Even though a state permits itself to be sued it is not liable for interest upon the demand set up, unless the statute specifically so provides. If a claim against the state does not bear interest when it accrues, a statute subsequently passed cannot impose a liability upon the state for interest thereon, for such an enactment creates a gift and is void." 25 R. C. L., 405.

"It is well settled, both on principle and authority, that a state cannot be held to the payment of interest on its debts unless bound by an Act of the Legislature or by a lawful contract of its executive officers made within the scope of their duly constituted authority. This principle applies to bonds, claims, judgments and warrants. The theory upon which the rule is based is that whenever interest is allowed either by statute or by common law, except in cases where there has been a contract to·pay interest, it is allowed for delay or default of the debtor. But delay or default cannot be attributed to the government. It is presumed to be always ready to pay what it owes. The apparently favored position of the government in this respect has been declared to be demanded by public policy." 15 R. C. L., 17.

In petitioner's argument, we find the following statement: "It can hardly be assumed that the state intended to charge a taxpayer a high rate of interest for failure to pay, and refuse to pay the taxpayer interest on taxes which it had improperly and illegally collected. The state's established legal rate of interest would automatically become a part of the illegal collection." If the above is intended to be the statement of a principle of law, it is without authority to support it. The great weight of authority shows that the law is just to the contrary. "So rigorously is the rule applied, that, in the adjustment of mutual claims between an individual and the government, the latter has been held entitled to interest on its credits although relieved from the payment of interest on the charges against it." *U. S. v. North American Transportation & Trading Co.,* 253 U. S., 330, 336, 40 S. Ct., 518, 521 (64 L. Ed., 935).

In refusing to allow interest to an individual while the government was collecting interest on mutual accounts, the Supreme Court of the United States held:

"An inherent vice of petitioner's argument is in the assumption that he and the government stand upon an equality with respect to interest. The truth is that in its dealings with individuals public policy demands that the government should occupy an apparently favored position. It may sue, but except by its own consent, cannot be sued. In the matter of costs it recovers but does not pay, and the liability of the individual would not be affected by the fact he had a judgment against the government which did not carry costs. So the statute of limitations may be pleaded by the government, but not against it; nor is it affected by the laches of its officers. *United States v. Barker,* 2 Wheat. 395 [4 L. Ed., 271]; The Antelope, 12 Wheat., 546 [6 L. Ed., 723]; *United States v. McLemore,* 4 How., 286 [11 L. Ed., 977]; *United States v. Boyd,* 5 How., 29 [12 L. Ed., 36]; *United States v. Thompson,* 98 U. S., 486 [25 L. Ed., 194]; *Simmons v. Ogle,* 105 U. S., 271 [26 L. Ed., 1087]; *United States v.*

*Kirkpatrick,* 9 Wheat., 720 [6 L. Ed., 199]; *United States v. Nicholl,* 12 Wheat., 505 [6 L. Ed., 709]; *Gaussen v. U. S.,* 97 U. S., 584 [24 L. Ed., 1009].

"Under the bankruptcy law, it was a preferred creditor, and its claims were paid even before the wages of operatives, clerks or house servants. Rev. Stat., § 5101. In short, the equities which arise as between individuals have but a limited application as between the government and a citizen." *United States v. Verdier,* 164 U. S., 213, 17 S. Ct., 42, 41 L. Ed., 407.

Petitioner's argument further states: "The Act of 1922 declares in express terms that all of the provisions of the Act of Congress are adopted as the statute law of the State as if the Act of Congress were written there *in totidem verbis.* If this is so, the Act of Congress becomes conclusive of this question. The Act of Congress has the following provision which is applicable to a refund or a credit." The argument then sets forth Section 1324 of an Act of Congress (42 Stat., 316) as to the allowance of claims for refund, interest, etc., as is the practice with the United States government under the terms of an Act of Congress of 1921. This provision of the Act of Congress, however, was not adopted by the Act of the General Assembly of South Carolina, 1922, at page 897, as has been heretofore decided by this Court. "Had the Federal Income Tax Act of 1921 and the rules and regulations promulgated by the Department of Internal Revenue in pursuance of such Act, been adopted without any provisos, this Court would have to look to that Act in all of its terms for deciding any question arising under it. It was adopted, however, *in totidem verbis,* 'for the purpose of determining the amount of net income, upon which income taxes are to be paid under the provisions of this Act, and for the purpose of fixing the amount of the said income tax the payment and collection thereof.' Acts of the General Assembly of S. C., 1922, p. 897, § 2. This Act does not purport to give any rights or provide any remedies other-

than as stated in the declaration of its objects, which are to determine the amount of net income, to fix the amount of income tax, and provide for its payment and collection. Although adopted in its entirety, it is adopted for these specific purposes only." *Western Union Tel. Co. v. Query,* 144 S. C., 234, 142 S. E., 509.

This proceeding against the Tax Commission is, furthermore, a suit against the State. It is not against the officers who have performed their duty under the tax statute, but is for the purpose of compelling the State treasurer to take moneys in his custody belonging to the State sufficient to pay the supposed obligation of the State to the petitioner. That the Sate may not be sued without its consent is the rule too well established to need citation of authority. *State, etc., v. State Dispensary Commission,* 79 S. C., 316, 60 S. E., 928.

It is strongly argued by the petitioner that the State should, as a matter of right, pay interest or money improperly collected by it as income taxes, placed in the State's treasury, and used in the business of the State. This argument is one for the General Assembly to consider as a matter of policy. This Court, in the absence of legislative enactment, cannot respond thereto.

The judgment of this Court is that the petition be dismissed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN, STABLER and CARTER concur.