**NUTT v. ELLERBE et al.**

District Court, E. D. South Carolina.
March 9, 1932.

B. Wofford Wait, of Tampa, Fla., and Nathans & Sinkler, of Charleston, S. C., for plaintiff.

Jno. M. Daniel, Atty. Gen., for South Carolina and Cordie Page and J. Ivey Humphrey, Asst. Attys. Gen., for defendants.

Before PARKER, Circuit Judge, and GLENN and ERNEST F. COCHRAN, District Judges.

ERNEST F. COCHRAN, District Judge.

The plaintiff filed his bill for an injunction against the defendants to prevent them from enforcing acts of the state of South Carolina which will be hereinafter cited, on the ground that those statutes are in conflict with the Constitution of the United States. A temporary restraining order was granted pending the hearing upon the application for an interlocutory injunction by three judges pursuant to section 266 of the Judicial Code (28 USCA § 380). The application has been heard before three judges, and the question of the issuance of the interlocutory injunction now comes up for decision.

The plaintiff is a citizen of Florida, and the defendants are all citizens of South Carolina. The plaintiff has twenty motortrucks which he operates for the hauling of freight and property both intrastate and interstate. He is not a common carrier, but is engaged in the business commonly known as contract hauling of freight and property for compensation and does not operate upon a regular schedule nor over a regular route, nor does he solicit or receive patronage along the route. Taxes have been assessed against him under the acts hereinafter referred to in the sum of $813.84, and demand has been made upon him therefor; and upon his failure to pay, the railroad commission has revoked his certificate for the operation of his motortrucks and has threatened to levy upon them for the payment of the taxes. Unless the taxes are paid, his trucks will be subject to levy and sale and his drivers to arrest and punishment under these acts. The value of the plaintiff's right to operate his trucks exceeds the sum of $3,000.

The plaintiff was engaged in this business of private contract hauling prior to the act of the Legislature of 1925 (Act approved April 8, 1925, 34 St. at Large, p. 252), and has been continuously engaged in that business up to the present time. Sections 1 and 2 of the act of 1925 are as follows:

"Section 1. *Terms Defined.*—Be it enacted by the General Assembly of the State of South Carolina: (a) The term 'corporation' wherever used in this act means a corporation, company, association or joint stock association. (b) The term 'person' wherever used in this act, means an individual, a firm or copartnership. (c) The term 'commission' wherever used in this act, means the High-

way Commission of the State of South Carolina. (d) The term 'motor vehicle carrier' wherever used in this act, means every corporation or person, their lessees, trustees or receivers, owning, controlling, operating or managing any motor propelled vehicle not usually operated on or over rails, used in the business of transporting persons or property for compensation over any improved public highway or streets as hereinafter defined, in this State. (e) For the purpose of this act, all vehicles equipped to carry a load and which are attached to and drawn by a motor vehicle, are hereby defined as trailers, and shall be classed as motor vehicles and subject to the provisions of this Act. (f) The term 'improved public highway' wherever used in this act, means every improved public highway in this State which is or may hereafter be declared to be a part of the State Highway system or any county highway system, or the streets of any city or town.

"Section 2. *Transportation by Motor Vehicle for Compensation Regulated—Exceptions—Permits.*—No corporation or person, their lessees, trustees, or receivers, shall operate any motor-propelled vehicle as herein before defined for transportation of persons or property for compensation on any improved public highways in this State, except in accordance with the provisions of this act, and such operation shall be subject to control, supervision and regulation by the commission in the manner provided by this act: Provided, however, That nothing in this act contained shall apply to motor vehicles while used exclusively for transporting persons to and from schools, Sunday schools, churches, or religious services of any kind, or to or from picnics or upon special prearranged excursions, or to United States mail carriers operating star routes, while engaged solely in carrying mail, or to farmers or dairymen, hauling dairy or farm products; or lumber haulers engaged in transporting lumber and logs from the forests to the shipping points: and, Provided, further, That except in this proviso set forth, nothing in this act contained shall apply to motor vehicles employed exclusively in the conduct of educational or sightseeing excursions or tours from points within or outside of this State to and from points of educational and historic interest in the State of South Carolina, that do not solicit or receive patronage along the route. But all such carriers shall be required only to obtain from the commission a permit to operate motor vehicles so employed over the improved public highways of this State, and to pay a license fee of fifty ($50.00) dollars per annum on vehicles seating twenty-five (25) passengers or less, and one hundred ($100.00) dollars per annum on vehicles seating more than twenty-five passengers."

Section 3 of that act provides that no motor vehicle carrier shall operate for the transportation of persons or property for compensation on any improved public highway in this state without first having obtained from the state highway commission under the provisions of the act a certificate, and paying the license fee required. The act further provides for the issuance of certificates in classes A, B, C, D, and E; and section 5 of the act requires an indemnity bond. It appears that the plaintiff was not required to comply with the act of 1925 before it was amended in 1930, apparently because he did not come within the description set forth in classes A, B, C, D, and E.

By the act approved March 9, 1928 (35 St. at Large, p. 1238), all the powers and duties imposed by the act of 1925 upon the highway commission, with reference to the regulation, supervision, and control of persons, etc., operating motor vehicles for hire under the act of 1925, were devolved upon the South Carolina railroad commission.

By the act approved April 7, 1930 (36 St. at Large, p. 1068), the act of 1925 was so amended that its provisions were specifically extended to that class of carriers of which the plaintiff is a member by a new classification therein designated by the term "Certificate F," created and defined as follows: "The Commission shall have power to grant a Certificate F to any person, firm, or corporation, when such person, firm, or corporation, proposes to engage in the business commonly known as contract hauling of freight or property, and when such applicant does not propose to operate upon a regular schedule or over a regular route * * * or receive patronage along the route" (section 3). And the amending act also provided (section 2) that: "No motor vehicle carrier shall hereafter operate for the transportation of persons or property for compensation on any improved public highway in this State without first having obtained from the commission, under the provisions of this Act, a certificate and paid the license fee herein required."

Section 14 of the act of 1925 was amended by the act approved March 7, 1930 (36 St. at Large, p. 1100), by providing that every officer, agent, or employee of any corporation, and every other person who willfully violates or fails to comply with or who procures,

aids, or abets in the violation of any provision of the act, or who fails to obey, observe, or comply with any lawful order, decision, or rule or regulation, direction, demand, or requirement of the commission or any part or provision thereof, etc., shall be guilty of a misdemeanor, and punishable by fine of not less than $25 nor exceeding $100, or imprisonment of not less than ten days nor more than thirty days.

It appears that the plaintiff was granted a certificate F under the provisions of the amending Act of April 7, 1930. This opinion deals only with class F, and we are not now concerned with classes A, B, C, D, and E.

Section 66 of the General Appropriation Act, approved May 9, 1931 (37 S. C. St. at Large, p. 454), is as follows:

"Total (Item 2) Motor Transport Division......$21,635.33 * * *

"Provided, further, That the expense of the Motor Transport Division provided in Item 2 shall be paid by the Motor Transport Carriers for hire subject to regulation by the Railroad Commission, in such proportion as the gross revenue of each and every person, firm or corporation engaged in such motor transport service for hire shall bear to the whole of such expenses. For the purpose of ascertaining such gross revenue each and every person, firm or corporation engaged in the business of motor transportation for hire shall file with the Railroad Commission on or before the fifteenth day of September, 1931, a return under oath, showing the gross revenue derived from the business of hauling freight and/or passengers for hire by means of Motor Vehicles during the first six months of the calendar year 1931. The said Railroad Commission shall within thirty days after the receipt of such returns file with the Comptroller General a statement of all such gross revenues, and the Comptroller General is hereby authorized, empowered and directed to levy against all persons, firms or corporations so engaged in such business an assessment prorated in accordance with the proportion above set forth. The Comptroller General shall immediately certify to the State Treasurer the amounts of such assessments, and on or before the fifteenth day of October, 1931, all persons, firms, or corporations against whom any such assessment may be made shall pay to the State Treasurer the amount of the assessment so levied. Any person, firm or corporation failing or refusing to make the return herein provided or to pay the assessment levied in accordance therewith shall be subject to the immediate revocation of his, her or its license by the Railroad Commission. The assessment made in accordance with this provision shall be in addition to all other taxes or licenses which may by law be assessed against said motor transport carriers for hire and shall constitute a first lien against the property used in such transport service, enforceable as are liens for all other taxes."

The taxes in question were assessed against the plaintiff under the General Appropriation Act of 1931, and as above stated, demand has been made upon him, he has failed and refused to pay the taxes, and the railroad commission has revoked his certificate or license and is about to enforce the collection of these taxes under the provisions of the several acts referred to.

■■ The first question to be considered is whether this court has jurisdiction. There is diversity of citizenship and the case also arises under the Constitution of the United States. But counsel for the defendants contends that the amount in dispute is the tax sought to be collected, which is less than $3,000. The rule is that the jurisdictional amount is to be tested by the value of the object to be gained by the plaintiff. The object of the injunction is not merely to prevent the collection of the tax, but to protect the right of the plaintiff to continue his business without unlawful interference. In such case, the jurisdictional amount is not to be tested by the mere immediate pecuniary damage resulting from the acts complained of, but by the value of the business to be protected and the wrong to the property rights which the plaintiff seeks to have recognized and enforced. This is not a case where the statute merely seeks to impose a tax and nothing more, but the statute in addition forbids the carrying on of the business without the payment of the tax and obtaining of the certificate or license. In the former class of cases, the only thing involved is the amount of the tax; but in the latter class, there is involved not only the tax, but the right to do business without unlawful interference by the state. In the present case, the commission has not only assessed the tax, but revoked the plaintiff's license to do business, and may harass him by seizure and sale of his trucks and by prosecution of his truck drivers. The amount involved therefore is sufficient to give this court jurisdiction. This view, we think, is amply sustained by the following cases: Hunt v. New York Cotton Exchange, 205 U. S. 322, 27 S. Ct. 529, 51 L. Ed. 821; Bitterman v. L. & N. R. Co., 207 U. S. 205, 28 S.

Ct. 91, 52 L. Ed. 171, 12 Ann. Cas. 693; Berryman v. Board of Trustees of Whitman College, 222 U. S. 334, 32 S. Ct. 147, 56 L. Ed. 225; Glenwood, etc., Co. v. Mutual, etc., Co., 239 U. S. 121, 36 S. Ct. 30, 60 L. Ed. 174; Western & A. R. R. v. Railroad Comn. of Ga., 261 U. S. 264, 43 S. Ct. 252, 67 L. Ed. 645; Packard v. Banton, 264 U. S. 140, 44 S. Ct. 257, 68 L. Ed. 596; City of Hutchinson v. Beckham (C. C. A. 8th) 118 F. 399; Campbell Baking Co. v. City of Maryville (D. C.) 31 F.(2d) 466; Southern Exp. Co. v. Mayor, etc., of Ensley (C. C.) 116 F. 756, 759. Cf. Scott v. Donald, 165 U. S. 107, 17 S. Ct. 262, 41 L. Ed. 648; Adam v. New York Trust Co. (C. C. A.) 37 F.(2d) 826; Station WBT v. Poulnot (D. C.) 46 F.(2d) 671; Nashville, etc., R. Co. v. McConnell (C. C.) 82 F. 65, 73; Texas & Pacific R. Co. v. Kuteman (C. C. A.) 54 F. 547; Evenson v. Spaulding (C. C. A.) 150 F. 517, 9 L. R. A. (N. S.) 904; Gallardo v. Questell (C. C. A. 1st) 29 F.(2d) 897, 899.

█ The next question is whether the plaintiff has an adequate remedy at law. The acts under consideration make no provision whereby the plaintiff may pay the tax and recover it. No statute has been called to our attention which provides a remedy at law for the plaintiff, and we are aware of none. The Supreme Court of South Carolina has held that taxes cannot be recovered in the absence of a statute specifically providing therefor. City of Columbia v. Peurifoy, 148 S. C. 349, 353, 146 S. E. 93. Counsel for defendants suggests that suit may be brought under certain general provisions, namely, sections 511 and 512 of the Code of South Carolina of 1922, vol. 3. But these sections, by their very terms, apply only to general property taxes *charged upon the books of the* various *county treasurers* of the state and have no application whatever to taxes assessed by other taxing bodies, and the Supreme Court of South Carolina has so held. City of Columbia v. Peurifoy, 148 S. C. 349, 353, 354, 146 S. E. 93; Monarch Mills v. *South Carolina Tax Comm.*, 149 S. C. 219, 146 S. E. 870.

It is true that in Southern Ry. Co. v. Query, 21 F.(2d) 333, this court held that sections 31 and 32 of the Income Tax Act of South Carolina, approved October 12, 1926 (35 St. at Large, p. 1), which were copied from sections 511 and 512 of the Code of 1922, provided a sufficient remedy at law for the recovery of the taxes paid to the tax commission of South Carolina; but that was because sections 31 and 32 of the Income Tax

Act of 1926, in copying sections 511 and 512 of the Code of 1922, *substituted* the *South Carolina tax commission* for *the county treasurer.* Southern Ry. Co. v. Query, therefore, is no authority in the present case, because here we have no act making sections 511 and 512 of the Code of 1922 applicable either to the state highway commission or the railroad commission. Moreover, while the first opinion in Southern Ry. Co. v. Query held that the remedy provided by the Income Tax Act of 1926 was an adequate remedy at law, nevertheless upon a rehearing it was decided that it was not an adequate remedy, because the remedy provided was a suit against the state of South Carolina, not available in the federal courts, and there was therefore no adequate remedy at law in the federal court. See Southern Ry. Co. v. Query, supra, pages 338, 339, 340, 341, 344, 345, of 21 F.(2d), where the South Carolina statutes are cited and fully discussed and the pertinent decisions cited.

The Supreme Court of South Carolina also has held that an action under these sections is a suit against the state. Columbia Gaslight Co. v. Mobley, 139 S. C. 107, 109, 137 S. E. 211, 212. Cf. Monarch Mills v. S. C. Tax Comm., 149 S. C. 219, 146 S. E. 870.

█ But there is another reason why the remedy provided by sections 511 and 512 of the Code of 1922 is inadequate. Those sections provide merely for the recovery of the amount of the tax, and no interest. Whatever may be said as to those views which were entertained in remote times respecting interest, considering such exactions in all cases usurious or illegal, if not positively sinful, yet in modern times such archaic notions have long since been abandoned. Money is now a proper subject of hire, and the habits and customs of the people and modern law all concur in recognizing that interest is a proper means of compensation for the use of money lent or wrongfully detained. A remedy which does not provide for a reasonable amount of interest is not a complete or adequate remedy. Southern Ry. Co. v. Query (D. C.) 21 F.(2d) 333, 342. It is true that in Southern Ry. Co. v. Query, this court held that interest could be recoverable at the legal rate under the provisions of sections 31 and 32 of the Income Tax Act of 1926, which are copies almost verbatim of sections 511 and 512 of the Code of 1922, with the exception of the substitution of the tax commission for the county treasurer as above noted. But the decision on that point in Southern Ry. Co. v.

Query was based on the decision of the Supreme Court of South Carolina in Paris Mountain Water Co. v. Woodside, 133 S. C. 383, 131 S. E. 37, in which that court had allowed interest in an action to recover taxes under sections 511 and 512 of the Code. But the Supreme Court of South Carolina has since then practically overruled the case of Paris Mountain Water Co. v. Woodside, and held that in a proceeding against the state, no interest can be allowed in the absence of a statute expressly authorizing it. Monarch Mills v. S. C. Tax Comm., 149 S. C. 219, 146 S. E. 870.

█ It has been repeatedly held that the remedy at law must be plain and where there is doubt about it the taxpayer is not required to speculate and take the chances of being able to recover at law. Davis v. Wakelee, 156 U. S. 680, 15 S. Ct. 555, 39 L. Ed. 578; Union Pac. R. Co. v. Board of Com'rs of Weld County, 247 U. S. 282, 38 S. Ct. 510, 62 L. Ed. 1110; Atlantic Coast Line R. Co. v. Doughton, 262 U. S. 413, 426, 43 S. Ct. 620, 67 L. Ed. 1051, and cases cited therein.

However, we have no doubt that the plaintiff in this case has no adequate remedy at law, and therefore the bill in equity should be entertained.

█ This brings us to the merits. The plaintiff contends that the acts in question, as applied to him, are in conflict with the Constitution of the United States, on two grounds. The first ground is that the act of 1925 provides for the regulation and taxation of all motor vehicle carriers for compensation but exempts a favored class, namely, "farmers and dairymen hauling dairy or farm products" and "lumber haulers engaged in transporting lumber and logs from the forests to the shipping points." The plaintiff's argument is in substance that section 66 of the General Appropriation Act of May 9, 1931, provides for taxes only upon carriers for hire who are "subject to regulation by the railroad commission," and that if the act of 1925 as applied to him be unconstitutional, he is therefore not subject to regulation by the commission and consequently not liable to pay the taxes under the act of 1931. We think this contention is correct. There can be no doubt that the act of 1931 applies only to those who are subject to regulation under the previous acts above cited. If therefore the act of 1925 as amended by the act of April 7, 1930, is unconstitutional as applied to the plaintiff, he is not subject to the act, and consequently not subject to

taxation under the act of 1931. We agree also with the plaintiff that the exemptions made by the Legislature in the act of 1925 are arbitrary and in conflict with the Constitution of the United States. There is no doubt that the Legislature, so far as the Federal Constitution is concerned, may classify objects of taxation; but such classification must not be arbitrary, and must have some reasonable basis. Here the plaintiff is a private contract carrier for compensation. The state imposes upon him, for hauling freight and property over the highways of the state, a tax; but a farmer may haul farm products for compensation, a dairyman may haul dairy products for compensation, and lumber haulers may haul lumber and logs from the forests to shipping points for compensation, and are not required to pay any taxes or be subject to the regulations provided in the act. We can perceive no reason whatever why the one should be taxed and not the others. They are all private contract carriers and not common carriers; they all use the highways of the state; they all obtain compensation for their services; and they all carry freight and property. The mere fact that the carrier in one case is a farmer or a dairyman hauling dairy or farm products, or a lumber hauler transporting lumber and logs, while in the plaintiff's case he is transporting various other kinds of property, furnishes no valid ground for discrimination. Indeed, under the terms of the act, the plaintiff cannot even haul farm or dairy products, or lumber from the forests to shipping points, without paying the tax. No valid reason can be suggested why a tax should be imposed in one case and not in the other. It is unnecessary to enter into any discussion of the numerous cases upon the subject of the right of the state to classify for taxation. It is sufficient to say that we think this case is controlled by the principles announced by the Supreme Court in Smith v. Cahoon, Sheriff, 283 U. S. 553, 51 S. Ct. 582, 75 L. Ed. 1264.

We do not consider it necessary to decide now whether the other exemptions mentioned in the statute would render it unconstitutional or not; but we do hold that the exempting of farmers, dairymen, and lumbermen renders the statute invalid as to this plaintiff.

Counsel for the defendants argues that the statute was not intended to exempt farmers, dairymen, and lumbermen, except where they are hauling their own products; but the act provides for the regulation and

taxation of all private contract carriers for hire and expressly excludes farmers and dairymen hauling farm or dairy products, and lumber haulers transporting logs, etc., from its operation. There is not a syllable in the act to indicate that the Legislature meant to confine the exemption to those engaged in hauling their own products. Indeed, if such was the intention, the provision for such exemption would be entirely superfluous, for the act, by its very terms, does *not apply* to those engaged in hauling *their own products,* but only to those who are carriers *for compensation.*

■ The plaintiff contends also that the act of 1931 lays a tax upon gross revenues, and that inasmuch as the plaintiff is engaged in interstate business, the act as applied to him is in conflict with the Constitution of the United States because it constitutes a direct burden upon interstate commerce. We think this contention must be sustained. The statute might have been drawn so as to reach only the revenue derived from operations within South Carolina, but it was not so drawn, and if applied at all, must be applied in accordance with its language, which taxes the entire gross revenues of the plaintiff, including his entire interstate business. The act therefore constitutes a direct burden upon interstate commerce, and as applied to the plaintiff, is in conflict with the Constitution. The decisions of the Supreme Court of the United States fully sustain the plaintiff in this contention. New Jersey Tel. Co. v. State Board of Taxes and Assessments, 280 U. S. 338, 50 S. Ct. 111, 74 L. Ed. 463; Sprout v. City of South Bend, 277 U. S. 163, 170, 171, 48 S. Ct. 502, 72 L. Ed. 833, 62 A. L. R. 45; Alpha Portland Cement Co. v. Com. of Mass., 268 U. S. 203, 218, 219, 45 S. Ct. 477, 69 L. Ed. 916, 44 A. L. R. 1219; Pullman Co. v. Richardson, 261 U. S. 330, 338, 43 S. Ct. 366, 67 L. Ed. 682; Wallace v. Hines, 253 U. S. 66, 40 S. Ct. 435, 64 L. Ed. 782; U. S. Glue Co. v. Oak Creek, 247 U. S. 321, 326–329, 38 S. Ct. 499, 62 L. Ed. 1135, Ann. Cas. 1918E, 748; Crew Levick Co. v. Pennsylvania, 245 U. S. 292, 38 S. Ct. 126, 62 L. Ed. 295; Meyer v. Wells Fargo & Co., 223 U. S. 298, 32 S. Ct. 218, 56 L. Ed. 445; Galveston, H. & S. A. R. Co. v. Texas, 210 U. S. 217, 28 S. Ct. 638, 52 L. Ed. 1031; Postal Tel. Cable Co. v. Adams, 155 U. S. 688, 695, 696, 15 S. Ct. 268, 39 L. Ed. 311.

Interlocutory injunction granted.

PARKER, Circuit Judge, and GLENN, District Judge, concur.