**WYETH et al. v. CROOKS, Collector of Internal Revenue.**

District Court, W. D. Missouri, St. Joseph Division. November 19, 1928.

No. 1036.

Ben Phillip, of St. Joseph, Mo. (Culver, Phillip & Voorhees, of St. Joseph, Mo., and H. H. Asher, of Lawrence, Kan., on the brief), for plaintiff.

Harry L. Thomas, Asst. U. S. Atty., of Kansas City, Mo. (William L. Vandeventer, U. S. Atty., of Kansas City, Mo., on the brief), for defendant.

OTIS, District Judge. This suit was brought to recover $35,979.77 (with interest), assessed as an additional estate tax on the estate of Huston Wyeth, deceased. The amount involved was based solely on the inclusion in the estate of amounts payable and paid to various beneficiaries and assignees on certain policies of insurance on the life of Wyeth.

These policies were 19 in number. Seven, aggregating $63,831.29, issued before the effective date of the Revenue Act of 1918 (40 Stat. 1057), were payable to certain named beneficiaries in which the beneficiaries were never changed; 6, aggregating $182,678.61, issued before the effective date of the Revenue Act of 1918, were unconditionally and irrevocably assigned to certain named assignees by Mr. Wyeth prior to his death; 6, aggregating $90,793.98, issued before the effective date of the Revenue Act of 1918, were unconditionally and irrevocably assigned to certain named assignees by Mr. Wyeth, and the premiums on them after assignment were paid by the assignees.

Wyeth died January 25, 1925. The applicable law, therefore, is the Revenue Act of 1924 (43 Stat. 253). That act, by section 301(a), 26 USCA § 1092, note, imposed a tax "upon the transfer of the net estate of every decedent dying after" its enactment. The net estate, upon the transfer of which the tax was thus imposed, was to be ascertained by making certain deductions from the gross estate, and it was provided (section 302, 26 USCA § 1094, note) that the value of the gross estate was to be determined by including the value at the time of death of all property real or personal, tangible or intangible, wherever situated, inter alia—

"[Section 302(g)]. To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable

by all other beneficiaries as insurance under policies taken out by the decedent upon his own life." 26 USCA § 1094, note.

It was section 302(g) which was applied by the collector here; that is to say, by virtue of that section he included in the gross estate of Mr. Wyeth the amounts receivable on policies taken out by Mr. Wyeth upon his life.

Standing alone, the section mentioned did not justify the inclusion of the policies involved in this case, since they were taken out, not only prior to the effective date of the Revenue Act of 1924, but before the effective date of the Revenue Act of 1918. Lewellyn Collector, v. Frick et al., 268 U. S. 238, 45 S. Ct. 487, 69 L. Ed. 934. The case cited squarely held that section 302(g) was not intended to apply to amounts received on insurance policies taken out prior to the effective date of the act of 1918.

But in the Revenue Act of 1924 subdivision (h) was added to section 302. It is:

"(h) Subdivisions (b), (c), (d), (e), (f), and (g) of this act shall apply to the transfers, trusts, estates, interests, rights, powers, and relinquishment of powers, as severally enumerated and described therein, whether made, created, arising, existing, exercised, or relinquished before or after the enactment of this act." 26 USCA § 1094, note.

■ 1. Does this newly added subdivision (h) have the effect of making section 302(g) retroactive, so as to warrant the inclusion of insurance policies taken out before the effective date of the Revenue Act of 1918?

Subdivision (g) does not enumerate or describe eo nomine any "transfers, trusts, estates, interests, rights, powers or relinquishment of powers." Subdivision (b) refers to the "interests" of the surviving spouse of a decedent, as dower, curtesy, or as an "estate" created in lieu of dower or curtesy; that is, it refers to an "interest" in the property held by the decedent at the time of his death. Subdivision (c) refers to any "interest" in the property held by the decedent of which, in contemplation of death, he made at any time a "transfer" or with respect to which at any time he created a "trust." It refers, also, to any "transfer" of a material part of his property within two years prior to his death without fair consideration therefor. Subdivision (d) refers to any interest in the property of the decedent of which he made a "transfer," or with respect to which he created a "trust," where the enjoyment thereof was subject at the time of his death to any change through the exercise of any "power" by the decedent, or by him in conjunction with others, or where the decedent "relinquished any

such power" in contemplation of death, where there was not a bona fide sale for a fair consideration. Subdivision (e) refers to an "interest" in the property of the decedent held by him and others as joint tenants. Subdivision (f) refers to property passing under a general "power" of appointment exercised by the decedent executed in contemplation of death. Thus subdivisions (b), (c), (d), (e), and (f) of section 302 makes specific reference to "transfers," "trusts," "estates," "interests," "powers," and "relinquishment of powers," but in subdivision (g) reference is made to none of these. The word "rights," as used in subdvision (h), does not appear in any of the preceding subdivisions referred to in subdivision (h).

Not only are "transfers," "trusts," "estates," "powers," and "relinquishment of powers" not enumerated and described eo nomine in subdivision (g), but that subdivision clearly does not in substance refer in any way to transfers, trusts, estates, powers, or relinquishment of powers. What it refers to is "amounts receivable as insurance." Does it refer to "interests"? I think not, as that word is used here. It appears from the context that by the word "interests" is meant some interest of the decedent, but the decedent has no interest in amounts receivable as insurance. Does it refer to "rights"? I think not. It refers to "amounts receivable." The idea of "rights" to such "amounts receivable," or in them, is not suggested by any of the language used.

But it may be said that subdivision (h) specifically refers to subdivision (g). As to that it is sufficient to say that the first clause of subdivision (g), which has to do with insurance received by the executor of the estate of the decedent, may sufficiently justify reference in subdivision (h) to subdivision (g). However that may be, my opinion is that subdivision (h) does not make any reference to the second clause in subdivision (g), and it is with that clause that we are concerned in this case. If so, then the case must be decided for plaintiffs on the authority of Lewellyn, Collector, v. Frick et al., supra.

■ 2. If we assume now that by subdivision (h) the Congress intended to make subdivision (g) retroactive, so as to include in the gross estate of a decedent amounts of insurance on policies taken out by a decedent receivable by beneficiaries other than the executor of his estate, then we have to determine whether it is a valid enactment. Its invalidity is asserted on two grounds: That it deprives beneficiaries receiving insurance of their property without due process of law; and that it imposes a direct tax not appor-

tioned in accordance with the provisions of the Constitution.

First of all, it should be said that the rights of the beneficiaries named in the policies in this case, and of their assignees, to the amounts payable under the policies, constituted property belonging to such beneficiaries and assignees, and not property transferred to them from the insured or his estate at his death. In the absence of any controversy touching this principle, it is unnecessary to cite the numerous authorities supporting it.

In Frick et al. v. Lewellyn, 298 F. 803, the District Court for the Western District of Pennsylvania held that the corresponding section of the Revenue Act of 1918, if construed to have a retroactive application (and it was so construed in that case), violated both constitutional provisions. The section involves, said the court, "the taking of property without due process of law—the levying of a direct tax without apportionment, as required by the Constitution." The court held that it was a direct tax upon property—not upon the property of the decedent, but upon the property of others; that is, the property of the beneficiaries to whom the amounts provided for in the policies were payable and paid. Similar conclusions were reached in two later cases in the same court. Grandin v. Heiner, 27 F.(2d) 454; Gillespie v. Heiner, 27 F.(2d) 455.

The Frick Case was taken on writ of error to the Supreme Court of the United States, and was decided by that court May 11, 1925, in an opinion written by Mr. Justice Holmes and reported in 268 U. S. 238, 45 S. Ct. 487, 69 L. Ed. 934. The Supreme Court did not pass upon the constitutional questions, although they were presented to the court and involved in the case. The Supreme Court held that the act was not intended retroactively to affect policies of insurance taken out prior to the effective date of the act. Referring to the constitutional questions, however, the court used significant, and I think controlling, language, as follows:

"By section 408, 40 Stat. 1100: * * * 'If any part of the gross estate consists of proceeds of policies of insurance upon the life of the decedent receivable by a beneficiary other than the executor, the executor shall be entitled to recover from such beneficiary such portion of the total tax paid as the proceeds, in excess of $40,000, of such policies bear to the net estate.' By section 409 * * * a personal liability is imposed upon the beneficiaries if the tax is not paid when due. The defendants in error say that if these policies are covered by the statute these sections show that the beneficiaries are taxed upon their own property, under the guise of a tax upon the transfer of his estate by Mr. Frick, and that this is taking their property without due process of law, citing Matter of Pell, 171 N. Y. 48, 63 N. E. 789, 57 L. R. A. 540, 89 Am. St. Rep. 791, and other cases. In view of their liability, *the objection cannot be escaped by calling the reference to their receipts a mere measure of the transfer tax. The interest of the beneficiaries is established by statutes of the states controlling the insurance and is not disputed.*" (Emphasis mine.)

The important sentences in this excerpt from the decision of the Supreme Court (and it is much more than mere obiter dictum, since it was dealing with the questions involved in the case) are these:

"The objection [that is, the objection that the tax is one not upon the transfer of an estate, but upon property of the beneficiaries] cannot be escaped by calling the reference to their receipts a mere measure of the transfer tax. The interest of the beneficiaries is established by statutes of the states controlling the insurance and is not disputed."

So the inclusion in the gross estate of the amounts received by the beneficiaries under insurance policies is not the making of those amounts a mere measure of the transfer tax, and, if not that, then the tax is upon the amounts received by the beneficiaries. If so, it is a direct tax, and it is a direct tax not apportioned as required by the Constitution, and a tax aimed at the estate of one person to be collected out of the property of another, and hence without due process of law.

Further language of the Supreme Court in the same case is significant. The court said:

"We do not propose to discuss the limits of the powers of Congress in cases like the present. It is enough to point out that at least *there would be a very serious question to be answered before Mrs. Frick and Miss Frick could be made to pay a tax on the transfer of his estate by Mr. Frick.* There would be another if the provisions for the liability of beneficiaries were held to be separable and it was proposed to make the estate pay a transfer tax for property that Mr. Frick did not transfer."

This language involves a recognition by the Supreme Court of the idea that the law in question really imposes a tax on the beneficiaries of insurance policies, as, of course, it does, and that, if the liability of beneficiaries as fixed by the act is excluded from consideration, then the act imposes a tax on a decedent's estate for a transfer of property which he does not transfer.

It is impossible to escape the conclusion that this act, when construed as it is construed by the Supreme Court in this case, is not constitutional. It does not use property as a mere measure, but imposes a tax on property. Therefore it is a direct property tax. As a property tax not apportioned in accordance with the population of the states, it contravenes section 2 of article 1 of the Constitution. If it compels one to pay out of his property the tax of another, or if it compels one to pay a tax measured by another's property, it contravenes article 5 of the Amendments to the Constitution. Generally speaking, indeed, that amendment does not restrict the taxing power of Congress (Brushaber v. Union Pac. R. R., 240 U. S. 1, 24, 36 S. Ct. 236, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713); but it does invalidate an act which purports to tax, but which is so arbitrary and capricious as to amount to confiscation. Nichols v. Coolidge et al., 274 U. S. 531, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081.

Even disregarding article 5 of the Amendments, there is in one opinion of the Supreme Court of the United States, Knowlton v. Moore, 178 U. S. 42, 77, 20 S. Ct. 747, 44 L. Ed. 969, a suggestion that such an act as the present one might be construed to contravene general constitutional principles. In that opinion Justice (later Chief Justice) White said:

"It may be doubted by some, aside from express constitutional restrictions, whether the taxation by Congress of the property of one person, accompanied with an arbitrary provision that the rate of tax shall be fixed with reference to the sum of the property of another, thus bringing about the profound inequality which we have noticed, would not transcend the limitations arising from those fundamental conceptions of free government which underlie all constitutional systems. On this question, however, in any of its aspects, we do not even intimate an opinion, as no occasion for doing so exists, since, as we understand the law, we are clearly of opinion that it does not sustain the construction which was placed on it by the court below."

A case which in principle is quite pertinent is Nichols v. Coolidge et al., supra. This case is concerned with section 402(c) of the Revenue Act of 1918 (40 Stat. 1097), being, with some modification, section 302(c) of the Revenue Act of 1924. That section provided that there should be included, in the gross estate of a decedent, property "to the extent of any interest therein of which the decedent has at any time made a transfer,

* * * intended to take effect in possession * * * at or after his death (whether such transfer or trust is made or created before or after the passage of this Act)." This section was held unconstitutional, as violative of article 5 of the Amendments, for the reason that it was so arbitrary and capricious as to amount to confiscation. The court said:

"Undoubtedly, Congress may require that property *subsequently* transferred in contemplation of death be treated as part of the estate for purposes of taxation. This is necessary to prevent evasion and give practical effect to the exercise of admitted power, but the right is limited by the necessity.

Under the theory advanced for the United States, the arbitrary, whimsical and burdensome character of the challenged tax is plain enough. An excise is prescribed, but the amount of it is made to depend upon past lawful transactions, not testamentary in character and beyond recall. Property of small value transferred before death may have become immensely valuable, and the estate tax, swollen by this, may leave nothing for distribution. Real estate transferred years ago, when of small value, may be worth an enormous sum at the death. If the deceased leaves no estate there can be no tax; if, on the other hand, he leaves ten dollars both that and the real estate become liable. Different estates must bear disproportionate burdens determined by what the deceased did one or twenty years before he died. * * *

"This court has recognized that a statute purporting to tax may be so arbitrary and capricious as to amount to confiscation and offend the Fifth Amendment. Brushaber v. Union Pac. R. R., 240 U. S. 1, 24, 36 S. Ct. 236, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713; Barclay & Co. v. Edwards, 267 U. S. 442, 450, 45 S. Ct. 135, 348, 69 L. Ed. 703. See, also, Knowlton v. Moore, 178 U. S. 41, 77, 20 S. Ct. 747, 44 L. Ed. 969. And we must conclude that section 402(c) of the statute here under consideration, in so far as it requires that there shall be included in the gross estate the value of property transferred by a decedent prior to its passage merely because the conveyance was intended to take effect in possession or enjoyment at or after his death, is arbitrary, capricious and amounts to confiscation. Whether or how far the challenged provision is valid in respect of transfers made subsequent to the enactment, we need not now consider."

If section 402(c), being section 302(c) of the act here under consideration, is arbitrary and capricious when applied to transfers of

property made before the passage of the act, then a fortiori section 302(g) is capricious and arbitrary when applied to amounts received by beneficiaries under policies of insurance taken out on the life of the decedent before the passage of the act.

Section 302(c) at least applies to property *which was once that of the decedent*. Section 302(g) applies to what was never the property of the decedent. If the value of the property referred to in section 302(c) may have greatly increased from the time when it was transferred by the decedent to the time of his death, so the money invested by a decedent in insurance policies by way of premiums paid may be entirely incommensurate with the amounts paid upon the policies when he dies. For example, upon the payment of a premium of $2,500 one might obtain a policy of insurance in the amount of $100,000. Assuming that he had additional insurance in the $40,000, if he died before he was called upon to pay a second premium, a tax would be assessed, measured by the amount of $100,000, although his investment was but $2,500. And so a multitude of illustrations might be put, indicating the unreasonable and arbitrary results possible. Chiefly, however, section 302(g) is arbitrary and capricious because it undertakes to include in the net and gross estate of the decedent what in law and fact is no part of either.

Judgment should be for the plaintiffs in the amount of $35,979.77, unlawfully assessed as a tax, and in the additional amount of $3,055.33, collected as interest on the amount unlawfully assessed. A formal decree may be prepared accordingly, and submitted for approval and entry.