DEVIN, J., not sitting.
Civil action to recover taxes paid under protest.
From 1934 until his death in 1937 Carl W. Harris was a resident of Forsyth County, N.C. In 1934 and 1935, certain policies of life insurance, aggregating $201,000 in face value, on his life, were issued to his wife, Mrs. Annie Meador Harris. Mrs. Harris signed the applications for and procured the issuance of the policies. Mr. Harris consented to take the physical examination, answer questions in respect thereto and *Page 530 
signed the other papers required of the person insured in the procurement of the insurance. The policies were payable to Mrs. Harris and Mr. Harris assumed no contractual relation in respect thereto. By reason of the provisions of the policies and of the riders attached to them at issuance, all property rights, benefits and advantages, such as the right to change the beneficiary, the right to borrow against the policy, the right to surrender the policy for its cash value, and the right to the proceeds if the beneficiary predeceased the insured were vested in Mrs. Harris or her estate, instead of Mr. Harris. While he was not under obligation so to do Mr. Harris, either directly or indirectly, paid all premiums due upon the policies.
On 3 December, 1937, Mrs. Harris created a trust whereby the proceeds of the policies were made payable to the plaintiff trustee. On or about 18 December, 1937, Mr. Harris died leaving his wife, Mrs. Annie Meador Harris, as principal beneficiary of his estate.
Under the asserted authority of Article I, ch. 127, Public Laws 1937, and particularly section 11 thereof, the defendant computed death taxes due the State of North Carolina by adding the amount of the insurance proceeds received by Mrs. Harris, less the statutory exemption of $20,000, to the value of the net estate of her husband distributable to Mrs. Harris, and by measuring the taxes by the base thus ascertained. The plaintiff, as executor, demanded of the trustee the sum assessed to be remitted to the defendant. The trustee paid the same under protest and the plaintiff, as executor, in turn paid same to the defendant under protest. In substance these are the facts alleged in the complaint.
Thereafter, in due time, plaintiffs brought this action to recover the taxes with interest. The defendant demurred to the complaint on the grounds that it does not state a cause of action. The demurrer was sustained and plaintiffs excepted and appealed.
Is the tax assessed against the proceeds of the life insurance policies procured by Mrs. Harris upon the life of her husband an inheritance or succession tax or is it an excise tax imposed upon the proceeds of life insurance independent of the Inheritance Tax Law? Is it a valid tax either as a succession tax or as an independent excise tax? These are the questions presented on this appeal.
The plaintiffs take the position that the tax was assessed and collected as an inheritance or a succession tax under Article I, ch. 127, Public *Page 531 
Laws 1937, and that as such it is invalid and uncollectible. In this view we concur.
An inheritance tax is laid on the transfer or passing of estates or property by legacy, devise or intestate succession; it is not a tax on the property itself, but on the right to acquire it by descent or testamentary gift. Magoun v. Bank, 170 U.S. 283, 42 L.Ed., 1037; Minot v. Winthrop,162 Mass. 113 26 L.R.A., 259; S. v. Alston, 94 Tenn. 674, 28 L.R.A., 178; Hagood v. Doughton, 195 N.C. 811, 143 S.E. 841.
Adams, J., discussing the subject in the Hagood case, supra, says:
" `Succession duty is a tax placed on the gratuitous acquisition of property which passes on the death of any person, by means of a transfer (called either a disposition or a devolution) from one person (called the predecessor) to another person (called the successor). Property chargeable with the tax is called a succession.' Hanson's Death Duties, 40 . . . the tax is a burden imposed by government upon gifts, legacies, inheritances, and successions, whether of real or personal property passing to certain persons by will, by intestate law, or by any deed or instrument made intervivos, intended to take effect at or after the death of the grantor. The tax is not imposed upon the property in the ordinary sense of the term but upon the right to dispose of it or to receive it — upon its transmission by will or descent. United States v. Perkins, 163 U.S. 625,41 L.Ed., 287."
Taxes of this nature rest in their essence upon the principle that death is the generating source from which the particular taxing power takes its being, and that it is the power to transmit, or the transmission from the dead to the living, on which such taxes are more immediately rested.Knowlton v. Moore, 178 U.S. 41, 44 L.Ed., 969; Hagood v. Doughton,supra. It is well settled that an inheritance tax is an excise tax upon the privilege of receiving property from a decedent by reason of his death.Martin v. Storrs, 277 Ky. 199; Werthan v. McCabe, 164 Tenn. 61,51 S.E.2d 840.
The pertinent statute, Article I, ch. 127, Public Laws 1937, imposes a tax upon the transfer of property; (a) by will or intestacy; (b) by intervivos transfer in contemplation of or intended to take effect in possession or enjoyment at or after death; (c) by a contingency operating at death, and (d) by power of appointment. Section 1. It is expressly provided that a failure to exercise a power of appointment shall constitute a transfer within the meaning of the act. Section 5. Then to make assurance doubly sure it is provided in section 11 that the proceeds of all life insurance policies payable at or after the death of the insured and whether payable to the estate of the insured or to a beneficiary or beneficiaries named in the policy shall be taxable at the rates provided for in this article, subject to the exemptions in section 2. *Page 532 
Provision is then made to allow the beneficiary credit for such premiums as were paid by him.
Clearly then under the express terms of the statute something must pass to the living from the dead. There must be some shifting of economic benefits from the dead to the living. This means, when applied to insurance policies, that the person whose life was insured must have some legal interest, some incident of ownership, which passed to the living, or some power of appointment (such as the power to change the beneficiary) which terminated at his death. There must be a "transfer" as defined in section 1, upon which the tax operates. Thus it is written in the statute.
When the property passes through a failure to exercise a power of appointment or other incident of control or disposition of the benefit, termination of the power of control at the time of the death insures to the benefit of him who owns the property subject to the power and thus brings about, at death, the completion of that shifting of the economic benefits of property which is the real subject of the tax, just as effectively as would its exercise, which latter may be subjected to a privilege tax. ChaseNational Bank v. U.S., 278 U.S. 327, 73 L.Ed., 405.
It is upon this theory that such taxes are upheld. But here, Mrs. Harris was more than a beneficiary as that term is used in insurance policies. Having an insurable interest in her husband's life, she procured the insurance. She was the contracting party and the beneficial owner of the policies. Harris possessed no power of control or appointment or any incident of transferable ownership. He had no right to change the beneficiary, no right to secure a loan on the policies, no right of assignment, no right of surrender. He was under no duty to pay the premiums. In no sense was he the contracting party. His death effected no "transfer" as defined in the act.
The thing taxed is the privilege of transferring and it is essential that there shall be a transfer, within the meaning of the statute, from decedent to the beneficiary by reason of death. There must be a transfer of something before there can be a tax upon its transfer and where the decedent had no interest in or control over the policy which could be transferred by his death its proceeds are not subject to our Inheritance Tax Law. See Chase National Bank v. U.S., supra; Bingham v. U.S.,296 U.S. 211, 80 L.Ed., 160 (1935); Industrial Trust Co. v. U.S.,296 U.S. 221, 80 L.Ed., 192 (1935); Walker v. U.S.,83 F.2d 103 (C.C.A. 8, 1936); Helburn v. Ballard, 85 F.2d 613
(C.C.A. 6, 1936); Grandin v. Heiner, 44 F.2d 141 (C.C.A. 3, 1930); amended 56 F.2d 1008 (C.C.A. 3, 1932); cert. den. 286 U.S. 56 (1932);Cook v. Commissioner, 66 F.2d 995 (C.C.A. 3, 1933); cert. den.291 U.S. 660; Pennsylvania Co. v. Commissioner, 79 F.2d 295 *Page 533 
(C.C.A. 3, 1935); cert. den. 296 U.S. 651; Chase National Bank v. U.S.
, 28 F. Supp. 947; In Re McGrath's Estate, 191 Wn. 496,71 P.2d 395; Werthan v. McCabe, supra; Dept. of Revenue v. Lanham'sExecutors, 278 Ky. 419, 128 S.W.2d 936; DeLeuil's Executors v. Dept.of Revenue, 278 Ky. 424, 128 S.W.2d 938; Wyeth v. Crooks,33 F.2d 1018 (D.C. Mo. 1928); Robinson v. U.S., 12 F. Supp. 550.
Nor did Harris, by the issuance of the policies, adopt a substitute for a testamentary disposition of any part of his property. As he did not procure their issuance he has adopted no substitute method of transfer. Hence, there was no inter vivos gift such as is contemplated by the statute. The payment of each premium constituted a completed gift. These the defendant does not seek to tax.
In the absence of clear language to that effect we will not assume that the Legislature intended to levy a succession or inheritance tax against property over which the deceased had no control and possessed no incident of ownership. Such is not the intent and purpose of the act. The language is expressly contra.
The payment was made pursuant to and in fulfillment of a contract, the consideration for which had been paid by or on behalf of Mrs. Harris. Whether the receipt thereof or the death of the deceased is a taxable event for that it brought about an accretion to the wealth of Mrs. Harris we need not now decide. Suffice it to say that the tax was unauthorized by statute. Its levy is an attempt to compel plaintiff to pay a tax on property passing in some manner from the deceased to Mrs. Harris, when, in fact, no property passed by will or under our intestate laws or by the exercise or failure to exercise any power of appointment. Nor did it pass by virtue of any contingency over which deceased had any control.
But the Attorney-General contends that section 11 lays a tax on the receipt of insurance by the beneficiary and is not laid on any "transfer" from the decedent; that it is not conditioned on any transfer or the retention by the deceased of any incidents of ownership. It is, he says, an independent excise tax laid upon the receipt of the proceeds of life insurance policies; the receipt is a taxable event and nothing more is required.
This section must be so construed in relation to other words and provisions of the statute as to carry out the intent of the Legislature. To proceed otherwise would do violence to generally accepted rules of interpretation. No such intent appears from the language of the statute and this interpretation is not permissible.
The proceeds of insurance policies payable to the estate have always been considered a part of the estate, taxable as such — and properly so. *Page 534 
We may not assume that the Legislature intended to withdraw this substantial part of many estates from the Inheritance Tax Law. If not, then to hold as contended by the Attorney-General would be to give section 11 a twofold purpose and effect. It imposes an inheritance tax upon the proceeds of policies payable to the estate and upon the proceeds of policies payable to beneficiaries wherein the insured retains the right to change the beneficiary or other power of appointment, the right to assign, the right to borrow, the right to surrender or other incident of ownership; and it is an independent excise tax when and if the person whose life is insured has no such incident of ownership and no power of appointment. This interpretation is not warranted by the language used. The section is a part of the whole. It must be so construed. We, therefore, cannot concur in this view.
Even so, the section cannot be upheld as an independent excise tax on the right to receive the benefits of the policies. As such it would offend against the uniformity provision of the Constitution. Article V, section 3, Constitution of North Carolina. It is inseparably woven into the Act. The proceeds of the policies become a part of the estate for the purpose of taxation. The taxes are to be paid in accord with the schedule and at the rates set forth in the Act. The proceeds are to be added to the other distributive share of the recipient in the estate of the deceased. The executor or administrator is required to report the fund as a part of the estate and is made liable for the payment of the sum assessed. It is thus that the defendant has interpreted and applied its provisions.
It follows that the rate of taxation depends not upon the amount of insurance but upon the amount of insurance plus the value of such other property as may be received from the estate. As the rate is graduated, one taxpayer is held to one rate while another pays at an entirely different and higher rate on the same amount of insurance. The tax to be paid is to be determined by the size of the estate or of the legacy or distributive share. This produces an inequality and lack of uniformity of taxation. TeaCo. v. Doughton, 196 N.C. 145, 144 S.E. 701; Anderson v. City ofAsheville, 194 N.C. 117, 138 S.E. 715; S. v. Williams, 158 N.C. 610,73 S.E. 1000; Worth v. R. R., 89 N.C. 291.
For the reasons stated the judgment below is
Reversed.
DEVIN, J., not sitting. *Page 535