# MARY C. WESTPHAL AND OTHERS v. COMMISSIONER OF TAXATION.

122 N. W. (2d) 123.

May 29, 1963—No. 38,658.

*Walter F. Mondale,* Attorney General, and *Robert E. Lucas,* Special Assistant Attorney General, for relator.

*Wheeler, Fredrikson & Larson* and *T. E. Holloran,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Certiorari wherein the commissioner of taxation seeks to review an order of the Board of Tax Appeals dated November 28, 1961, in which it held that the sum of $50,000 derived from a life insurance policy on the life of William R. Westphal, who died June 21, 1956, was exempt from inheritance taxes in his estate.

The facts as stipulated by the parties are as follows: The policy was issued by Connecticut General Life Insurance Company on October 18, 1954. Mary C. Westphal, wife of the insured, was named as beneficiary therein. In the application for this policy the only place in which the signature of Westphal appears is on a line marked "Signature of Proposed Insured." The policy contained the following provisions:

"Connecticut General Life Insurance Company * * * Insures William R. Westphal and agrees to pay (the Beneficiary) Mary C. Westphal, wife, Absolute Owner, or to her executors * * *, with the right to receive all payments of whatsoever nature that may become due and the right to change the Beneficiary and to exercise all other options and privileges granted under the policy, all without notice to or consent of the Insured, all of whose interest is vested in the Absolute Owner * * *."

The semiannual premiums due on the policy were $1,745.50. During the lifetime of Westphal, all premiums on this policy were paid from a joint bank account maintained in the name of the insured and the beneficiary in the First National Bank of Minneapolis. Notices of premiums due on the policy were sent by the insurer to Mrs. Westphal. On the date of Westphal's death, premiums totaling $6,982 had been paid on the policy from funds in the joint bank account described, leaving $11,617.04 still on deposit therein. Of this amount $8,350 thereof had been deposited by Mrs. Westphal from her personal funds.

On September 7, 1954, Westphal signed a similar application for another insurance policy on his life, also with Connecticut General Life Insurance Company and in the amount of $50,000. In this policy, issued September 24, 1954, Flour City Ornamental Iron Company was named as beneficiary and absolute owner with the exclusive right to change the beneficiary at any time thereafter without the consent of the insured and, without his consent, to exercise all other options therein which insured otherwise would have possessed.

After the death of Westphal, the $50,000 due on the first of the above-described policies was paid to Mrs. Westphal as beneficiary pursuant to its terms. Subsequently, the probate court of Hennepin County appointed the First National Bank of Minneapolis and Mrs. Westphal as coexecutors of the last will and testament of William R. Westphal, and they are presently serving in this capacity.

On August 4, 1958, the commissioner of taxation issued an order determining that, for the purposes of computing the inheritance tax due in the William R. Westphal estate, the proceeds of this insurance policy, as well as the $8,350 on deposit in the joint bank account, should be included in the assets of such estate. The proceeds of the policy payable to the Flour City Ornamental Iron Company were not required to be included in the assets of such estate for the purpose of computing inheritance taxes. The commissioner relied upon Minn. St. 291.01, subd. 5, which provides in part:

"(1) The proceeds of all life or accident insurance policies *taken out by decedent* and payable on account of his death, *receivable by named beneficiaries,* shall be subject to the [inheritance] tax herein imposed, as follows:

"(a) The proceeds of all such policies hereafter issued *payable to named beneficiaries.*

"(b) The proceeds of all such policies now in force payable to named beneficiaries *in which the insured has the right to change the beneficiary* or under which he has cash surrender right.

"(2) Such proceeds shall be deemed a transfer within the meaning of that term as used in this chapter and a part of decedent's estate, and

shall be taxable to the person or persons entitled thereto." (Italics supplied.)

Following the commissioner's determination, an appeal was taken to the Board of Tax Appeals. On November 28, 1961, the board made findings of fact upon which it based a decision amending the order of the commissioner as follows:

"* * * There shall be allowed as additional consideration furnished by the surviving joint tenant for joint tenancy property the sum of $8,350.00. The proceeds of Connecticut General policy No. 839829 in the amount of $50,000.00 shall be eliminated from the proceeds of insurance subject to tax. The additional tax due shall be computed after deletion of the above two items."

In a memorandum accompanying the decision, the board set forth the following:

"The Appellants [respondents here] contend that under no circumstances should the proceeds be taxed because no transfer or shifting of economic benefits from the decedent to the beneficiary is involved. They further contend that the proceeds of this particular policy do not come within the meaning of the inheritance tax law because the policy was not 'taken out' by the decedent.

"It is the contention of the Commissioner that even though the policy was from its inception owned by the beneficiary, that the proceeds are taxable if it is determined that the policy was 'taken out' by the decedent. It is contended that the signing of the application form by the decedent is such a 'taking out' as contemplated under the statute.

\* \* \* \* \*

"Appellants' contention, with which we agree, is that unless there be some shifting of benefits there is no basis for an inheritance tax. They point out that since the Statute requires that a policy be 'taken out by decedent' it assumes that a decedent must have ipso facto possessed the policy or one or more of the rights and benefits which add up to the policy as a contract so that once having possessed something of which he later becomes dispossessed, a shifting of benefits occurs upon which an inheritance tax may be based.

\* \* \* \* \*

"As pointed out by Appellants, if we keep in mind that the Minnesota inheritance tax is not a blanket excise tax on proceeds of life insurance but has the specific objective of taxing the transfer or shifting of economic benefits from a decedent insured to his beneficiary then the signing of the application form offers little help in the interpretation of the expression 'taken out by the decedent.' We concur that simple consistency with the objective and scope of the law requires the interpretation that 'taken out by the decedent' means that at the time the policy contract came into being the decedent, in his own right, received an economic benefit capable of being transferred or extinguished. The mere signing of an application form and submission to a physical examination, without acquiring an economic interest in the insurance contract itself, as in the instant case, cannot be said to have been taken out by decedent for he has received nothing capable of transfer. * * *

"To construe the term 'taken out by the decedent' to mean that one must acquire some valuable economic interest in or control over the policy will give the meaning to Section 291.01(5) that was intended by the Legislature. It will make this section operate with more uniformity and predictability."

On January 8, 1962, upon a petition of the commissioner of taxation, this court issued a writ of certiorari to review the decision of the Board of Tax Appeals. Previous to the issuance of this writ, the parties stipulated that of the balance in the joint checking account at the time of Mr. Westphal's death the sum of $8,350 thereof deposited therein by Mrs. Westphal was exempt from inheritance taxes.

■ Section 291.01, subd. 1, specifies that an inheritance tax is:

"* * * imposed upon any transfer of property * * * or any interest therein * * *:

"(1) When the transfer is by will or by the intestate laws of this state * * *."

Subds. 3, 4, and 5 describe certain properties and interests which are taxable thereunder, and the exercise of certain rights or powers on the part of the owner, or the happening of certain events, which subjects them to inheritance taxes. Thus, subd. 3 of § 291.01 relates to transfers

made effective by the exercise of a "power of appointment"; subd. 4(1) to transfers resulting from the acquisition through survivorship of property held in joint tenancy; while subd. 5(1, 2) provides that the proceeds of insurance policies "taken out by decedent and payable on account of his death, receivable by named beneficiaries" shall be deemed transfers within the meaning of that term as used in c. 291 and taxable to the person entitled thereto. Under these latter provisions, the proceeds of an insurance policy are subject to inheritance taxes in the hands of the beneficiary receiving them provided it is established that the policy was "taken out by decedent" in favor of such beneficiary.

■ However, we are of the opinion, as was the Board of Tax Appeals, that under § 291.01, subd. 5(1), before a policy can be said to have been "taken out" by a decedent so as to come within the purview of this section, the latter must have acquired some beneficial right or interest in the policy as of the date of its issuance, or incurred some obligation or duty as to premium payments with respect thereto which would ultimately cause all or some part of the proceeds of the policy to come into existence.

■ Here, the insured gained nothing by reason of placing his signature upon the application. No obligations or duties rested upon him because of such application. The proceeds of the policy, which came into existence and were payable upon his death, did not result from his payment of premiums or from any act on his part prior to his death. While his death marked the point at which the insurance proceeds came into existence in the hands of the beneficiary named in the policy, it was her payment of the premiums after the application had been executed and the policy issued which gave rise to the creation of the property sought to be taxed. In Wachovia Bank & Trust Co. v. Maxwell, 221 N. C. 528, 20 S. E. (2d) 840, 150 A. L. R. 1273, which was referred to by this court in DeCoster v. Commissioner of Taxation, 216 Minn. 1, 5, 11 N. W. (2d) 489, 491, and in which similar statutory provisions were construed, it was stated (221 N. C. 531, 20 S. E. [2d] 843):

"The pertinent statute, Article I, ch. 127, Public Laws 1937, imposes a tax upon the transfer of property; * * * it is provided in section 11 that the proceeds of all life insurance policies payable at or after the death

of the insured and whether payable to the estate of the insured or to a beneficiary or beneficiaries named in the policy shall be taxable at the rates provided for in this article, * * *.

\* \* \* \* \*

"* * * But here, Mrs. Harris was more than a beneficiary as that term is used in insurance policies. Having an insurable interest in her husband's life, she procured the insurance. She was the contracting party and the beneficial owner of the policies. Harris possessed no power of control or appointment or any incident of transferable ownership. * * *

"* * * There must be a transfer of something before there can be a tax upon its transfer and where the decedent had no interest in or control over the policy which could be transferred by his death its proceeds are not subject to our Inheritance Tax Law. * * *

\* \* \* \* \*

"In the absence of clear language to that effect we will not assume that the Legislature intended to levy a succession or inheritance tax against property over which the deceased had no control and possessed no incident of ownership. * * *

"The payment was made pursuant to and in fulfillment of a contract, the consideration for which had been paid by or on behalf of Mrs. Harris. * * * Its levy is an attempt to compel plaintiff to pay a tax on property passing in some manner from the deceased to Mrs. Harris, when, in fact, no property passed by will or under our intestate laws or by the exercise or failure to exercise any power of appointment. Nor did it pass by virtue of any contingency over which deceased had any control.

"But the Attorney-General contends that * * * [the tax] is * * * an 'independent excise tax laid upon the receipt of the proceeds of life insurance policies; the receipt is a taxable event and nothing more is required.

"* * * No such intent appears from the language of the statute and this interpretation is not permissible."

Based upon the foregoing considerations, we are of the opinion that the order of the Board of Tax Appeals should be affirmed.

Affirmed.

Mr. Justice Sheran, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.